**SAN BERNARDINO PHYSICIANS' SERVICES MEDICAL GROUP, INC., Plaintiff/Appellant,**

v.

**COUNTY OF SAN BERNARDINO, Board of Supervisors for San Bernardino, Francis L. Comunale, Defendants/Appellees.**

No. 85–6344.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1986.

Decided Aug. 26, 1987.

Lisa Lorea-Correll, Los Angeles, Cal., for plaintiff-appellant.

Christopher Lockwood, San Bernardino, Cal., for defendants-appellees.

Before HUG, CANBY,[*] and NORRIS, Circuit Judges.

CANBY, Circuit Judge:

## INTRODUCTION

Appellant San Bernardino Physicians' Services Medical Group (Physicians' Group) contends that the San Bernardino County Board of Supervisors constructively breached Physicians' Group's four-year contract to provide professional services at the San Bernardino Medical Center (Medical Center). Physicians' Group brought a civil rights suit under 42 U.S.C. § 1983, alleging that the County deprived the Group of its property interest in the contract without due process of law. The district court granted the defendants' motion for summary judgment or a directed verdict on the ground that our opinion in *Loehr v. Ventura County Community College District*, 743 F.2d 1310 (9th Cir. 1984), established that the right to performance of a contract is not a "property interest" protected by the Fourteenth Amendment.

Although we read *Loehr* more narrowly than did the district court, we agree that appellant had no protected property interest. We therefore affirm the summary judgment.

## FACTS

In January 1980, appellant Physicians' Group, a California professional corporation, contracted with the Board of Supervisors to provide professional emergency room and burn care treatment services to the county-operated Medical Center. The written four-year contract provided for automatic one-year extensions if neither party gave 180 days notice of termination before

---

[*] Following the death of Judge Duniway, Judge Canby was randomly selected to replace him. He has had the benefit of listening to the tapes of oral argument, as well as reading the briefs and reviewing the record in his consideration of this case.

the contract expired. The contract could be terminated within its term only "for cause." The terminating party was required to give 120 days' notice of the breach that prompted the decision to terminate; if the other party cured the breach, notice of termination would be cancelled. Physicians' Group's sole shareholder, Dr. Dressler, insisted on these protective measures because he was relocating from Boston and was concerned about his ability to attract qualified physicians to supply contract services.

Physicians' Group and the County entered into a second contract in June 1980, this time for Physicians' Group to provide general surgical services at the Medical Center. The second contract had a fixed term of one year. The contract was automatically renewable for additional one-year periods under the same terms and conditions as the emergency room and burn care services contract.

In May 1981, during both contracts' fixed terms, the County notified Physicians' Group that it was terminating the contracts effective that following fall. Physicians' Group challenged the termination in state court, arguing that the County's reliance on the 180 day notice provision ignored the contracts' further requirement of termination during the fixed term only for cause. The Board rescinded the termination notices before trial.

Meanwhile, various County employees and the Board allegedly harassed Physicians' Group employees, threatened to terminate the contract prematurely, delayed payments due Physicians' Group, conducted unwarranted and overly intrusive audits of the Group's records, and refused to provide adequate office space. Physicians' Group responded in December 1981 by suing the County, the Board, and certain Medical Center administrators in federal court. The complaint asserted claims under 42 U.S.C. §§ 1983 and 1985,[1] alleging that the defendants' concerted actions vio-

lated Physicians' Group's civil rights under the Fifth and Fourteenth Amendments by depriving them of property without due process. The complaint requested injunctive relief, compensatory and punitive damages, and attorneys' fees.

In June 1982, during discovery in the federal case, Physicians' Group allowed the surgical services contract to expire by its own terms. The Group also terminated the emergency room and burn care services contract in October 1982, approximately 18 months before its fixed expiration date. The Group contends that both actions grew directly out of the continued harassment by defendants.

The defendants moved alternatively for summary judgment or a directed verdict on June 25, 1985. For purposes of its ruling, the district court assumed that the defendants committed material breaches of contract; that the breaches were part of a deliberate pattern intended to frustrate the Group's performance; and that the breaches effectively frustrated Physicians' Group's performance and justified the Group's premature termination of the contract. The court determined as a matter of law that, absent state or local laws to supplement an employee's contractual rights, a government contract by itself cannot create a constitutionally protected property interest. The district court distinguished appellant's interests from constitutionally protected interests in public-employment cases; it found that the protected interests in public-employment cases derived from state or local laws, not from contracts. Memorandum of Decision at 5. The district court therefore granted summary judgment,[2] reasoning that the plaintiff could not "establish a 'legitimate claim of entitlement' to continuation of the service contract." *Id.* at 7. The court's sole authority for its result was this court's decision in *Loehr*, 743 F.2d 1310.

## ISSUE

Appellant contends, and we agree, that the district court interpreted *Loehr* too

---

1. The claim under section 1985 has not been pursued on appeal.

2. The district court granted the alternative motion for summary judgment or directed verdict. Because the case was not actually tried, we treat the court's order as a summary judgment.

broadly in applying it to this case. The critical issue, however, is whether appellant Physicians' Group's rights to performance on the contracts, as a supplier of services to the government, were sufficient property interests to merit constitutional protection. If so, we then must consider whether appellant was denied "due process." *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

## STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. *Loehr*, 743 F.2d at 1313. We may affirm the district court only if the record, read in the light most favorable to appellant, reveals no genuine issues of material fact and shows that appellees were entitled to judgment as a matter of law. *Id.* We also review de novo the district court's interpretation of state and federal law, *Matter of McLinn*, 739 F.2d 1395, 1399–1400 (9th Cir.1984) (en banc), and we may affirm on any ground that the record supports. *Islamic Republic of Iran v. Boeing Co.*, 771 F.2d 1279, 1288 (9th Cir.1985), *cert. dismissed*, —— U.S. ——, 107 S.Ct. 450, 93 L.Ed.2d 397 (1986).

## DISCUSSION

■ 42 U.S.C. § 1983 creates a federal cause of action for deprivation, under color of state law, of rights guaranteed by the United States Constitution or laws. *Stonecipher v. Bray*, 653 F.2d 398, 401 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). A corporation such as Physicians' Group is a "person" possessing Fourteenth Amendment due process rights. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778–80, 98 S.Ct. 1407, 1416–18, 55 L.Ed.2d 707 (1978); *Northeast Georgia Radiological Associates v. Tidwell*, 670 F.2d 507, 512 (5th Cir.1982). The jurisdictional statute for section 1983 actions, 28 U.S.C. § 1343(3), makes no distinction between deprivation of personal liberties and proprietary rights. *Lynch v. Household Fi-*

*nance Corporation*, 405 U.S. 538, 542, 92 S.Ct. 1113, 1116, 31 L.Ed.2d 424 (1972).

## I.  *Property Interests Protected by the Due Process Clause*

### A.  *Loehr*

The district court understood *Loehr* to hold that contractual rights alone cannot create property interests protected by the Due Process Clause. Memorandum of Decision at 6. In so ruling, the court read *Loehr* too broadly and arrived at a conclusion contrary to federal and state decisions holding that contracts may create protected property interests.

In *Loehr*, this court considered the section 1983 claim of a school district superintendent. Loehr contended that the school district deprived him of a property interest without due process of law when it terminated his four-year contract in mid-term. He asserted three related sources for his protected property interest: his employment contract with the school district, state law, and official district policy. *Loehr*, 743 F.2d at 1314.

We began in *Loehr* by interpreting the employment contract. *Id.* We determined that Loehr "contracted for no more than California law automatically provides." *Id.* at 1316; *see also id.* at 1314. Reviewing the relevant state statutes, we concluded that California had, by statute, restricted the property interests of school district administrators to the right to hold their original classroom teaching positions. *Id.* at 1314–16. Accordingly, Loehr had no property interest in continued employment as school superintendent and was not, therefore, entitled to due process before the district terminated his contract. We expressly refrained from deciding whether the applicable statute would have permitted Loehr independently to contract for a constitutionally protected property interest in his position as superintendent. *Id.* at 1316.

### B.  *Property Interests Arising From Contract*

■ In fact, it has long been settled that a contract can create a constitutionally pro-

tected property interest. In *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, the Supreme Court explained that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), a companion case, the Court continued its definition:

> "[P]roperty" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Id.* at 601, 92 S.Ct. at 2699 (citations omitted). The Court went on to state that written contracts, as clear evidence of a formal understanding supporting a claim of entitlement, can create protected property interests. *Id. See also Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Vanelli v. Reynolds School District No. 7*, 667 F.2d 773, 777 (9th Cir.1982); *Vail v. Board of Education*, 706 F.2d 1435, 1437–38 (7th Cir. 1983), *aff'd by an equally divided Court*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984); *Tidwell*, 670 F.2d at 510–11. California case law also recognizes the "fundamental principle that property interests protected by the due process provision of both the state and federal Constitution may arise from *contract* as well as from the language of a statute." *Walker v. Northern San Diego County Hospital District*, 135 Cal.App.3d 896, 901, 185 Cal.Rptr. 617, 620 (1982) (emphasis in original). Thus, a constitutionally protectible entitlement may arise from contractual language providing for discharge from employment only for "cause," *see Perry*, 408 U.S. at 601, 92 S.Ct. at 2699, or even from the mere fact that a contract provides for continued employment during a fixed term. *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 367 (9th Cir.1976); *see Vail*, 706 F.2d at 1438; *Vanelli*, 667 F.2d at 777.

Having recognized, as we must, that deprivation of contractual rights may create a claim under section 1983, we are faced with an equally compelling necessity to recognize that not *every* interference with contractual expectations does so. It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim.[3] "[W]e must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts." *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir.1983).

Even though every contract may confer some legal rights under state law, that fact alone need not place all contracts within federal due process protection. "Although the underlying substantive interest is created by 'an independent source such as

---

**3.** Some decisions have dismissed contract-based section 1983 claims simply on the ground that the action was essentially one for breach of contract and included no complaint that a separate injury was caused by the procedural inadequacy of the state's treatment. *E.g., Casey v. Depetrillo*, 697 F.2d 22 (1st Cir.1983) (school employees alleging breach of employment contract); *Taliaferro v. Willett*, 588 F.2d 428 (4th Cir.1978) (tenured teacher allegedly forced to retire early). *See also Green v. Board of School Commissioners*, 716 F.2d 1191, 1192 (7th Cir. 1983); *Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir.1981). Where the nature of the claim is unambiguous, that approach is doubtless correct. It is very difficult to draw the line, however, between a deprivation of property and a "mere" breach of contract when an employee with tenure or a fixed-term contract is discharged without a hearing. *See e.g., Vail*, 706 F.2d 1435. Damages may differ between the two kinds of claims, *see Carey v. Piphus*, 435 U.S. 247, 262–63, 98 S.Ct. 1042, 1051–52, 55 L.Ed.2d 252 (1978); *Vanelli*, 667 F.2d at 780–81, but there may be great overlap, and the liability-causing act is the same. In the present case, at least some of the allegations of the complaint may be characterized as claims of deprivation without due process.

Our decision not to affirm summarily on the ground that the case is at bottom one for breach of contract does not mean that we minimize the danger of federalizing state contract law. As our text indicates, that concern underlies our holding that Physicians' Group's contract confers no federally protected entitlement.

state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Perry,* 408 U.S. at 602, 92 S.Ct. at 2700); *see also Loehr,* 743 F.2d at 1314; *Brown,* 722 F.2d at 364. Federal law accordingly may differentiate between contractual rights. Our problem, then, is to determine what kinds of contracts with the state create rights that are protected by the Fourteenth Amendment.

■ The prime protected category, which has supplied nearly all of the successful contract-based section 1983 actions, is that of employment contracts. The seminal cases of *Roth* and *Perry* dealt with employment, as did nearly all of the cases to which we have referred thus far. What renders an employment contract protectible by the Fourteenth Amendment is often not clearly articulated; we are willing to accept the view that crucial factors are "the security with which [the interest] is held under state law and its importance to the holder." *Brown,* 722 F.2d at 364. We also believe that the focus of the latter factor is upon the importance of the interest to the holder *as an individual.* The right of an individual not to be deprived of employment that he or she has been guaranteed is more easily characterized as a civil right, meant to be protected by section 1983, than are many other contractual rights.[4]

## II. *Physicians' Group's Contracts*

■ Understanding the preferred position of employment contracts, Physicians'

Group attempts to analogize its contracts to ones of employment. The contracts were essentially for the provision of personal services; the physicians in the group made important personal decisions in the expectation of continued employment; and the security of a fixed term and termination only for "cause" were elements of the contract. But the analogy fails. Physicians' Group did not itself become employed as an individual would; it was not capable of doing so.[5] True, the medical services it contracted to supply depended on the personal services of its employees, but virtually any contract to supply the state will ultimately entail personal services. The physician employees of Physicians' Group may or may not have security of tenure, but that status depends entirely upon their contracts with their employer, Physicians' Group, and not upon the contracts between Physicians' Group and the state. Physicians' Group is the plaintiff in this case, and it stands in the position of supplier, not employee.

By rejecting Physicians' Group's attempt to place itself within the protection afforded tenured employees, we do not suggest that employment contracts are the only kind that may be entitled to Fourteenth Amendment protection. Indeed, there may be great variety in the types of state-secured entitlements subject to constitutional protection. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). Yet the farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection without subsuming the entire state law of public

4. *Cf. Bellotti,* 435 U.S. at 779 n. 14, 98 S.Ct. at 1417 n. 14. ("Whether or not a particular guarantee is 'purely personal' or is unavailable to corporations for some other reason depends on the nature, history, and purpose of the particular constitutional provision.") We do not suggest, of course, that the protections of procedural due process are unavailable to corporations. We simply hold that contracts securing individual rights of employment are more appropriate for due process protection than a corporation's contract to supply the services of others.

5. Physicians' Group's contract to supply the services of others is to be distinguished from an individual's contract to supply his or her own services. *See Farr v. Chesney,* 437 F.Supp. 521 (D.C.Pa.1977) (finding due process entitlement in favor of individual counselor independently contracting with public agency). It may be that the professional corporation that was permitted to bring a section 1983 action in *Northeast Georgia Radiological Associates v. Tidwell,* 670 F.2d 507, 512 (5th Cir.1982), was similarly an individual's alter ego. If not, we cannot fully accept *Tidwell's* analysis.

contracts. We find nothing in Physicians' Group's contract that confers an interest equal to those contractual interests that have been afforded constitutional protection in the past, or that ought to be afforded it now.[6]

We do not rule that a corporation can never avail itself of section 1983 to protect its purely contractual rights; we are unable to anticipate every type of contract to which a corporation or similar entity might be party. It is enough to hold that Physicians' Group's contract to supply medical services to the state does not confer any constitutionally protectible interest on Physicians' Group.[7] Its contract to supply services to the state cannot sensibly be distinguished from construction contracts or even purely material supply contracts, for purposes of federal protection. It may well be that the requirements of federalism have more to do with the line we draw than the shadings of contract entitlement doctrine. See L. Tribe, *American Constitutional Law* 530–31 (1978). But of our conclusion, we are certain. This claim presents no federal case. Physicians' Groups' remedy, if any, lies in state law.

AFFIRMED.

---

**6.** Appellees argue that even if Physicians' Group has a protectible interest under state and federal law, no harm is done until plaintiffs exhaust their state court remedies. *Cf. Williamson County Regional Planning v. Hamilton Bank,* 473 U.S. 172, 194–95, 105 S.Ct. 3108, 3121–22, 87 L.Ed.2d 126 (1985). *Williamson,* however, dealt with a situation where there could be no requirement of predeprivation due process. *See also Hudson v. Palmer,* 468 U.S. 517, 532–33, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981). Here, Physicians' Group alleges planned, non-random behavior on the part of the state. In such circumstances, a section 1983 case for violation of due process may lie without regard to, or use of, the state's postdeprivation remedies. *Logan,* 455 U.S. at

435–37, 102 S.Ct. at 1157–59. The district court ruled correctly on this issue.

**7.** Alternatively, it could be held that any entitlement conferred by Physicians' Group's contracts was adequately protected by a post-deprivation hearing, and that state contract remedies were sufficient for that purpose. That approach, however, still requires a determination that Physicians' Groups' supply contracts are fundamentally different from tenured employment contracts, which are protected by a due process requirement of predeprivation hearing. *See Brown,* 722 F.2d at 365 (decision as to what process is due is dependent in part on importance of interest of which plaintiff was deprived).