Sandra J. KNUDSON,
Plaintiff–Appellant,

v.

CITY OF ELLENSBURG, Lawrence M. Loveless and Jane Doe Loveless, and the marital community composed thereof, Defendants-Appellees.

No. 85–3991.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1987.

Decided Nov. 18, 1987.

Lawrence B. Linville and Michael Woerner, Seattle, Wash., for plaintiff-appellant.

Walter G. Meyer and David A. Thompson, Yakima, Wash., for defendants-appellees.

Before FARRIS, ALARCON and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Sandra Knudson appeals a summary judgment in favor of the City of Ellensburg (City) and its Chief of Police Larry Loveless of her due process claims arising from the City's cancellation without a hearing of her disability medical benefit. The district court found Knudson lacked a property interest in the benefit and therefore had no right to due process. We reverse and remand.

## BACKGROUND

Knudson began working as a police officer for the City in 1968. In 1975 she applied for and was awarded disability retirement under the Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF), Wash.Rev.Code §§ 41.26.010 to –.921. In accordance with LEOFF, the State of Washington paid her a disability pension and the City paid for her medical expenses. In August 1981 she was convicted of a narcotics felony. After determining that the conviction would bar Knudson from further employment, the City discharged her from the police force effective May 1, 1982. Knudson notified the Civil Service Examiner that she did not intend to appeal her discharge. Without a hearing the City found that Knudson's status as a former member of the force relieved it of its duty to pay the medical benefit. The City then notified her that it would not pay for her medical expenses incurred after May 11, 1982. The State continues to pay the disability pension.

· Knudson sued the City and Chief Loveless for equitable relief and damages under 42 U.S.C. § 1983, alleging that the City's termination of her medical benefit without a prior hearing denied her of property without due process of law. On cross-motions for summary judgment the district court granted judgment for the City and Chief Loveless on the ground that Knudson had no protected property interest in the medical benefit. Knudson timely appeals.

## JURISDICTION

We have jurisdiction of this appeal under 28 U.S.C. § 1291 even though the court characterized the judgment as "without prejudice." *See Ash v. Cvetkov,* 739 F.2d 493, 496 (9th Cir.1984) (dismissal without prejudice is reviewable final judgment), *cert. denied,* 470 U.S. 1007, 105 S.Ct. 1368, 84 L.Ed.2d 387 (1985).

## STANDARD OF REVIEW

We review a summary judgment de novo and will affirm only if, viewing the evidence in the light most favorable to the party opposing the motion, no genuine questions of fact exist and the district court correctly applied the substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

## DISCUSSION

The Fourteenth Amendment's guarantee of procedural due process protects individuals from erroneous or unjustified deprivations of life, liberty, or property, and assures them that the government deals with them fairly. *Carey v. Piphus,* 435 U.S. 247, 259, 262, 98 S.Ct. 1042, 1050, 1051, 55 L.Ed.2d 252 (1978). In a procedural due process case we apply a two step analysis. We first determine whether a liberty or property interest exists entitling the individual to due process. *Hewitt v. Grabicki,* 794 F.2d 1373, 1380 (9th Cir. 1986). If a protected interest exists we then employ a balancing test to determine what process is due. *Id.*

## I. PROPERTY INTEREST

Knudson has a property interest in a government benefit only if she has a legitimate claim of entitlement to it. A mere abstract need or desire for it is not enough. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). While the underlying substantive interest is created by "existing rules or understandings that stem from an independent source such as state law," *id.; accord Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), federal constitutional law determines whether that interest constitutes "property" protected by the

Fourteenth Amendment, *Memphis Light, Gas, & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978); *San Bernadino Physicians' Servs. Medical Group v. County of San Bernadino,* 825 F.2d 1404, 1408–09 (9th Cir.1987). Not every state entitlement rises to the level of a constitutionally protected property interest. *See, e.g., San Bernadino Physicians' Servs.,* 825 F.2d at 1409 (corporation's contract to provide physicians' services not protected by the Due Process Clause). Disability retirement benefits, however, have been accorded federal constitutional protection. *Ostlund v. Bobb,* 825 F.2d 1371, 1373 (9th Cir.1987); *see also Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (social security disability benefits). Knudson thus has a property interest in the disability medical benefit protected by the Fourteenth Amendment if she has a legitimate claim of entitlement in the benefit under state law.

Knudson claims she is entitled to medical benefits under Wash.Rev.Code § 41.26.-150(1), which mandates a municipal employer to pay the medical expenses of "any active member, or any member hereafter retired, on account of ... disability."[1] Section 41.26.150 is part of LEOFF, a "reserve system for the payment of death, disability, and retirement benefits to law enforcement officers and fire fighters." *Id.* § 41.26.020. LEOFF sets standards for retirement both for years of service, *id.* § 41.26.090, and for disability, *id.* §§ 41.-26.120 (work-related disability), 41.26.125 (non-work-related disability). Police officers eligible for a disability retirement receive a disability pension from the state until they recover from the disability or die, *id.* § 41.26.130(1), (3), as well as payment of their medical expenses by their employer, *id.* § 41.26.150.

The City maintains that Knudson has no legitimate claim to the benefit because it is conditioned on her employment and she is no longer employed. The City also argues that Knudson forfeited the benefit by committing a felony. Knudson contends that her medical benefit is a component of her LEOFF disability retirement package. Once vested, she argues, the benefit cannot be canceled until she is no longer disabled. No Washington case has considered this state law issue, which we review de novo. *In re McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

■ The unambiguous language of section 41.26.150 undercuts the City's view that Knudson's right to the medical benefit is contingent upon her employment. Any "active member, or any member hereafter retired, on account of service, sickness or disability" qualifies for the benefit. Wash. Rev.Code § 41.26.150. An *active* police officer's receipt of the medical benefit is plainly contingent upon employment; the right to the benefit ceases upon termination from work. No such restriction exists however on a *retiree*'s eligibility for the benefit. The retirement medical benefit is contingent not on *active* employment but on past service, sickness, or disability. The entitlement may later be lost if the disability retiree refuses to submit to a medical exam, *id.* § 41.26.150(1), or is no longer disabled, *id.; see id.* § 41.26.140(1) (disability board to determine whether disability retiree remains disabled), but the statute does not condition the retiree's continuing entitlement on current or future employment.[2]

---

**1.** Wash.Rev.Code § 41.26.150(1) provides in pertinent part:

    Whenever any active member, or any member hereafter retired, on account of service, sickness or disability, ... of which the disability board shall be judge, ... requires medical services, the employer shall pay for such active or retired member the necessary medical services not payable from some other source as provided for in subsection (2).... *Provided* ..., That the disability board in all cases may have the active or retired member ... examined at any time by a licensed physician ... to be appointed by the

disability board, for the purpose of ascertaining the nature and extent of the sickness or disability.... Any active or retired member who refuses to submit to such examination ... shall forfeit all his rights to benefits under this section for the period of such refusal....

**2.** When able to work, the disabled retiree is entitled to return to work. Wash.Rev.Code § 41.26.140(2). While Knudson has lost the right to return to work guaranteed by section 41.26.140, we do not understand this section to affect her right to disability benefits.

Furthermore, restricting the disability medical benefit to those retirees eligible to return to work would contravene the purposes of LEOFF: to provide disability and retirement benefits to police and firefighters. *Id.* § 41.26.020. Police who paid into the LEOFF retirement system and retired due to disability legitimately expect to be paid their disability medical costs—especially those costs related to their disability—until they recover. Their right to receive the benefit when the conditions of eligibility have been met is akin to an insured's right to payment of medical expenses pursuant to a medical insurance policy.

The City argues, however, that Knudson is not qualified for the medical benefit due to her work discharge because section 41.26.150 requires the recipient be an "active or retired member" and LEOFF's general definition of "member" is a "person who is serving on a full time, fully compensated basis" as a police officer. Wash.Rev.Code § 41.26.030(3), (8). Acceptance of the City's reading would lead to the untenable conclusion that all retirees, even those on regular retirement, fail to qualify for the medical benefit. Retirees are not serving "full time." *See Webster's Third New International Dictionary* 919 (full-time defined as "employed for or working the amount of time considered customary or standard"). Nor are they paid on a "fully compensated basis"; their pension is only a portion of their average salary at the time of their retirement. *See, e.g.,* Wash.Rev. Code § 41.26.130(1) (disability pension limited to sixty percent of salary). Knudson was an active member of the police force when she retired due to disability. She accordingly qualifies for the medical bene-

fit as a "retired member" under the plain language of section 41.26.150.

The Washington Supreme Court has held that a disabled police officer discharged for misconduct may not be denied his vested LEOFF disability pension. *State ex rel. Johnson v. Funkhouser,* 52 Wash.2d 370, 325 P.2d 297 (1958). Since the only statutory condition for receipt of the disability pension is the occurrence of disability, the right to the pension vests at the time of disablement and is not lost due to later discharge from employment. *Id.* at 372–74, 325 P.2d at 299–300. Knudson's statutory right to the disability medical benefit likewise vested when she suffered disabling injury while employed by the City. Once vested, her benefit could not be cut off by her work discharge.[3]

■ Nor did Knudson forfeit her disability benefit because of her felony conviction. A regular LEOFF retirement pension—once vested—is not forfeited upon the retiree's conviction of a felony unrelated to work performance or contribution to the pension fund. *Leonard v. City of Seattle,* 81 Wash.2d 479, 487–88, 503 P.2d 741, 747–48 (1972). In *Leonard,* LEOFF pension fund trustees terminated a retiree's pension because he was convicted of a felony. The trustees relied on Wash.Rev.Code § 41.20.110, which requires a pension fund board to cancel a LEOFF pension or benefit of "any person who ... shall be convicted of any felony." The court held section 41.20.110 unconstitutional to the extent that it worked a "forfeiture of an estate" for conviction of a crime in violation of article 1, section 15 of the Washington Constitution. *Id.* at 490, 503 P.2d at 748. The court reasoned that the retiree had paid into the LEOFF system, his pension was

---

3. Our interpretation of section 41.26.150 is consistent with an unpublished letter opinion of the Washington Attorney General, which concludes that a retiree's LEOFF medical benefit is a pension and retirement benefit subject to state constitutional restrictions on reducing vested pension benefits as set forth in *Bakenhus v. City of Seattle,* 48 Wash.2d 695, 296 P.2d 536 (1956) (retiree cannot be divested of accrued LEOFF pension by intervening legislation which inequitably operates to the detriment of the accrued rights). 1975 Wash.Att'y Gen.Ltr.Op. No.

2 (Jan. 13, 1975). The Attorney General reasoned that a qualified employee has a constitutionally vested property right in the medical benefit because it accrues as a matter of right under a statute that constitutes a part of a pension system. *Id.* at 5. The Attorney General's unpublished letter opinions have been cited by Washington courts as authoritative. *See, e.g., Green River Community College Dist. No. 10 v. Higher Educ. Personnel Bd.,* 107 Wash.2d 427, 440–41, 730 P.2d 653, 660–61 (1986).

deferred compensation, he had met all conditions precedent to receipt of the pension, and he therefore had a vested property right in it "much like his property interests in paid-up insurance." *Id.* at 487–88, 503 P.2d at 746–47.[4]

■ The City argues that *Leonard* is distinguishable because disability benefits are not deferred compensation, relying on *In re Marriage of Huteson,* 27 Wash.App. 539, 543, 619 P.2d 991, 994 (1980), which held that a disability pension is not included in community property as deferred compensation. In distributing property upon marital dissolution a court may properly view a disability pension as compensation for "loss of future earnings" rather than as community property and "deferred compensation." *Id.* However, we regard disability benefits as deferred compensation for the purpose of vesting of a property interest. Just as a regular pension is "deferred compensation for services rendered and contributions made," *Leonard,* 81 Wash.2d at 487, 503 P.2d at 746, a disability benefit is a right to future payment that accrues by virtue of past labor services and past contributions to the disability fund, *see Funkhouser,* 52 Wash.2d at 374, 325 P.2d at 299–300 (suggesting disability pension is deferred compensation for services rendered). Moreover, regardless of how it is

characterized, the right to a disability benefit vests upon retirement due to disability, like a right to insurance. Vested disability medical benefits accordingly are not subject to forfeiture for conviction of a crime unconnected to the retiree's past public employment.

We conclude that Knudson's medical benefit vested at the time of her disablement. Despite her discharge from active service and her conviction of a crime, she is entitled under Washington law to receive the benefit so long as she remains disabled and complies with the other requirements of LEOFF.[5] She thus has a property interest in the benefit protected by the Fourteenth Amendment.

## II. WHAT PROCESS IS DUE?

Because Knudson had a constitutionally protected property interest, we must determine whether the process the City furnished adequately protected that interest. Knudson was entitled to a meaningful hearing at a meaningful time. *Piatt v. MacDougall,* 773 F.2d 1032, 1036 (9th Cir. 1985) (en banc). She contends that she was entitled to some opportunity to be heard—but not a full evidentiary hearing—before the City canceled her medical benefit. The City argues that Knudson was given the

---

**4.** Neither the City nor the district court cited section 41.20.110 as authority for the City to cancel the medical benefit. Although the *Leonard* decision declared section 41.20.110 unconstitutional as applied to a vested retirement pension, the statute has not been repealed or amended and remains on the books—albeit in a moribund state—and so arguably authorizes forfeiture of non-vested benefits. *See Foundation for the Handicapped v. Department of Social & Health Servs.,* 97 Wash.2d 691, 695, 648 P.2d 884, 887 (1982) (a statute "held invalid as applied is not void on its face or incapable of valid application in other circumstances") *cert. denied,* 459 U.S. 1146, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983). While we find that the disabled police officer's medical benefit is vested, we note that section 41.20.110 may be inapposite. By its terms only a pension fund board, not a municipality, may cancel benefits because of a felony conviction.

**5.** We have carefully reviewed the record, and conclude that there is no implication whatsoever that Knudson, at the time she was awarded disability retirement in 1976, suffered from a drug-related disability. Rather, the Washington

Law Enforcement Officers' and Firefighters' Retirement Board concluded that she was suffering from "moderately severe anxiety reaction and mild depressive reaction." Elsewhere in the record, her condition was referred to as "anxiety attacks ... suffered from a frustration syndrome." There is no implication whatsoever in the record that she was suffering from a drug-related illness that would qualify as "caused or brought on by dissipation or abuse."

Moreover, a determination of "dissipation or abuse" is reserved, under Wash.Rev.Code section 41.26.150, to the Disability Board. As noted above, the Board made no such finding. All that matters is the initial determination made by the Board for purposes of qualification for medical benefits. It does not matter that Knudson may or may not have later been suffering from a drug-related problem. The legally significant moment, for the purposes of section 41.26.150, is the award of disability, and not any later termination. Finally, this ground for disqualifying the appellant from medical benefits was raised nowhere on appeal.

right to a hearing on the propriety of the work discharge before her discharge and that nothing more was required to cancel her medical payments.

■ A recipient of a government benefit is generally entitled to some form of notice and an opportunity to be heard before being deprived of a property or liberty interest. *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 778 (9th Cir.1982); *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) ("absent 'the necessity of quick action by the State or the impracticality of providing any predeprivation process,' a post-deprivation hearing here would be constitutionally inadequate" (quoting *Parratt v. Taylor*, 451 U.S. 527, 539, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981)); *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970); *cf. Mathews*, 424 U.S. at 332–49, 96 S.Ct. at 901–10 (due process does not require predeprivation evidentiary hearing when social security disability recipient had adequate predeprivation opportunity to submit evidence and objections in writing and a postdeprivation evidentiary hearing). We analyze whether the timing of a hearing comports with due process under the balancing test formulated in *Mathews*. We consider the private interest affected by the official action, the risk the procedures used will erroneously deprive that interest as well as the probable value of other procedures, and the fiscal or administrative burdens that other procedures would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903; *Vanelli*, 667 F.2d at 778.

Knudson has a significant interest in the uninterrupted payment of her medical expenses pending determination of her claim. Given the cost of medical treatment an interruption in medical benefits is a potential personal calamity. Government medical entitlement programs may to some extent, however, soften the blow of an erroneous deprivation. *See id.* 424 U.S. at 340, 96 S.Ct. at 905 (since eligibility for social security disability is not based on need, a recipient may have other sources of income or government assistance available to reduce severity of deprivation). The possible length of wrongful deprivation of the benefit also weighs in Knudson's favor. *Id.* at 341, 96 S.Ct. at 906. The City does not identify the procedures available to Knudson to contest her benefit cancellation, but she likely could obtain judicial review under the Washington Administrative Procedure Act, Wash.Rev.Code § 34.04.130. The lengthy time period a judicial hearing may entail, however, weighs against the sufficiency of the process afforded Knudson. *See Logan*, 455 U.S. at 436–37, 102 S.Ct. at 1158–59 (state's process likely deficient if it only consists of a "lengthy and speculative" tort action).

We must also consider the fairness and reliability of the procedures used. The City gave Knudson an opportunity to contest the propriety of her employment discharge in a full evidentiary hearing. Since Knudson could raise factual claims concerning her discharge, this process limited the risk of an erroneous factual determination. *See Alexander v. City of Menlo Park*, 787 F.2d 1371, 1374 (9th Cir.1986) (risk of error is high when the government decides a factual issue without allowing the individual affected to participate), *cert. denied*, — U.S. —, 107 S.Ct. 879, 93 L.Ed.2d 833 (1987). Still, the City failed to provide Knudson with an opportunity to contest its decision that her discharge rendered her ineligible for the medical benefit. An evidentiary hearing would be of little value to the City to resolve this statutory interpretation issue. *See Mathews*, 424 U.S. at 344–45, 96 S.Ct. at 907 (predeprivation written procedures adequate if no credibility issues are involved and decision is based on objective medical evidence). But some prior opportunity to object in writing to the City's proposed action would have reduced the risk of legal error in the determination of continued eligibility. *See Haygood v. Younger*, 769 F.2d 1350, 1357–58 (9th Cir.1985) (en banc) (prisoner's right to due process violated when given no prior opportunity to object to prison officials' legal error in computing sentence), *cert. denied*, — U.S. —, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). Allowing Knudson to file written objections would assure that

the City weighed all conflicting statutory and policy arguments, reduce the risk of erroneous deprivation, and provide minimal assurances of fair treatment.

Finally, we consider the City's fiscal and administrative interests. The City does not contend that predeprivation written procedures are impractical. Nor does it argue that a need to act quickly required it to cancel the medical benefits without permitting submission of written objections. *See Logan*, 455 U.S. at 436, 102 S.Ct. at 1158 (necessity of quick action may justify reliance on post-deprivation procedures). Requiring an evidentiary hearing might have a substantial adverse fiscal impact upon the City, but mandating a predeprivation written "hearing" should not.

Nor is a postdeprivation judicial hearing sufficient process under *Parratt*, 451 U.S. at 534–35, 540–41, 101 S.Ct. at 1912–13, 1915–16 (postdeprivation hearing satisfies due process if the deprivation results from state officials' random, unauthorized and negligent conduct because predeprivation hearing is impracticable) and *Hudson v. Palmer*, 468 U.S. 517, 533–36, 104 S.Ct. 3194, 3203–05, 82 L.Ed.2d 393 (1984) (same if state officials' conduct is random, unauthorized and intentional). We apply *Parratt* and *Hudson* only when "the state administrative machinery did not and could not have learned of the deprivation until after it occurred," not when state officials acted pursuant to state policy and followed state procedures they believed were proper. *Piatt*, 773 F.2d at 1036. The City terminated the medical benefit pursuant to its interpretation of LEOFF and failed to provide a predeprivation hearing because it believed none was required under state law. Its deliberate and considered decision does not fall within *Parratt*.

■ Knudson had a substantial interest in uninterrupted payment of her medical expenses pending a hearing on the legal issue of her continuing eligibility. An evidentiary hearing would be of little value to that determination, but a predeprivation opportunity to submit written objections to the City's proposed action would assure that the City adequately and fairly con-sidered Knudson's legal objections. Because that process was not unduly burdensome and the City articulated no significant need to act quickly, we hold that due process at the minimum required that quantum of process.

## III. REMEDY

■ A plaintiff deprived of a property interest without procedural due process can recover compensatory damages if the deprivation is determined to have been unjustified. *Carey v. Piphus*, 435 U.S. at 264, 98 S.Ct. at 1052. Compensable damages include emotional distress, *id.*, and recovery of the value of the plaintiff's property interest, *see Piatt*, 773 F.2d at 1036–37 (section 1983 plaintiff was entitled under state law to compensation for work done for private parties if he had actually performed the work; the district court was directed to determine whether he had done so). However, only nominal damages are recoverable for a deprivation of property determined to be otherwise justified. *Carey v. Piphus*, 435 U.S. at 266–67, 98 S.Ct. at 1053–54. In such a case the failure to accord due process cannot properly be viewed as the cause of the deprivation. *Id.* at 260, 98 S.Ct. at 1050; *see Vanelli*, 667 F.2d at 781 (section 1983 plaintiff who was discharged from employment without due process but whose discharge was justified could not recover lost employment benefits).

Knudson is entitled to receive the medical benefit under Washington law until she is no longer disabled or otherwise fails to comply with LEOFF's requirements. The City's cancellation of her benefit without due process was unjustified insofar as Knudson remained disabled. On remand the district court shall consequently award compensatory damages and equitable relief consistent with this opinion.

## CONCLUSION

We REVERSE the summary judgment for the City, order entry of summary judg-

ment for Knudson on liability, and RE-MAND for determination of the remedy.