**Carole Marsh CARTER, Plaintiff,**

v.

**Floyd LAMB, in his official capacity as a member of the Board of Commissioners of Lincoln County, Nevada, and in his individual capacity; Yvonne Culverwell, in her official capacity as a member of the Board of Commissioners of Lincoln County, Nevada; Edward Wright, in his official capacity as a member of the Board of Commissioners of Lincoln County, Nevada; and Lincoln County, Nevada, Defendants.**

No. CV–S–93–00721–PMP (LRL).

United States District Court,
D. Nevada.

Jan. 12, 1995.

Eric Zubel, Eric Zubel, Chtd., Las Vegas, NV, for plaintiff.

Thomas P. Beko, Erickson, Thorpe & Swainston, Ltd., Reno, NV, for defendants.

## ORDER

PRO, District Judge.

Before the Court is a Motion for Summary Judgment (# 46) filed by Defendants on October 11, 1994. Plaintiff Carole Marsh Carter filed an Opposition (# 51) on November 4, 1994, and an Errata (# 52) thereto on November 14, 1994. Defendants filed a Reply (# 57) on December 9, 1994.

## I. FACTUAL BACKGROUND

According to the facts as presented in Plaintiff's Second Amended and Supplemental Complaint (# 25), Plaintiff resides on a ranch located on an 80 acre parcel of land, bisected by the boundary between Nye and Lincoln Counties. Plaintiff has been the owner and occupier of the property since November 13, 1985. The nearest road which provides access to and egress from Plaintiff's homestead is commonly known as Sand Springs Road. Sand Springs Road accesses Highway 375, which leads to the unincorporated town of Rachel, Nevada, where Plaintiff and others in the area obtain food and supplies. Apparently the only other access to a paved roadway from Plaintiff's residence is over the Mail Summit Road which terminates at State Route 318.[1] Plaintiff alleges that the distance from Plaintiff's residence to

1. Defendants contend that the Court incorrectly concluded in its prior Order (# 22) addressing Defendants' Motion to Dismiss that there were only two access roads to Plaintiff's property. Defendants dispute this factual allegation and assert that there actually three access roads to Plaintiff's property: the Sand Springs Road, the Mail Summit Road and the Seamans Wash Road. At that time and for purposes of a Motion to Dismiss, however, the factual allegations of Plaintiffs' Complaint must be presumed to be true, *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987), and Plaintiff asserted that there were only two access roads. Thus, the Court did not "incorrectly conclude" that there were only two access roads, but merely included this fact, assumed to be true, in the Court's factual recitation. In any event, the dispute as to how many access roads actually lead to Plaintiff's property is immaterial for the purpose addressing the Motion presently before the Court.

State Route 318 is 10 miles longer than the distance from her residence to Highway 375, and that travel along Mail Summit Road is "extremely treacherous and hazardous ... when wet or covered with snow." *See* Plaintiff's Second Amended and Supplemental Complaint (# 25), at 3.

Pursuant to a contractual agreement between Nye and Lincoln Counties, Lincoln County has for many years removed snow from roadways in certain areas of Nye County. It had been the practice of the Lincoln County Road Department to perform this agreement with Nye County, and in past years, to remove snow from route 375 over the Sand Springs Road to provide access to Plaintiff's residence in Nye County. Since 1984, this alleged contractual agreement provided that the Lincoln County Road Department would charge the Nye County Road Department for the use of snow removal equipment and the time spent in its operation over the Nye County Roadways.

On December 7, 1992, a severe snow storm struck the vicinity of Plaintiff's ranch. On December 10, 1992, pursuant to the direction of Les McCroskey, then road master of Lincoln County, the snow was removed from the Sand Springs Road in order to provide Plaintiff and others with access to Rachel, Nevada for food and supplies. Lincoln County dispatched its snow removal equipment into Nye County for this purpose and removed the snow from the Pine Creek Canyon and Cottonwood Roads, later charging Nye County for this service, which charges were paid by Nye County.

On January 5 and 6, 1993, there was another snowstorm. Lincoln County, however, apparently did not remove the snow on Sand Springs Road. Consequently, Plaintiff claims to have experienced great difficulty negotiating the Sand Springs Road to Rachel, Nevada. Upon inquiry by Plaintiff, Defendant Floyd Lamb allegedly advised her that because she did not pay adequate taxes in Lincoln County, there existed no obligation on the part of the County to remove the snow from that roadway. Plaintiff claims that Lamb then ordered McCroskey not to plow the Sand Springs Road.

Plaintiff was able to gain access to Route 318 over the next month, but with "extreme difficulty." Plaintiff claims to have contacted Les McCroskey and apprised him of the situation, and on January 13, 1993, the Sand Springs road was plowed, apparently contrary to Lamb's instructions. Between January 13 and January 20, 1993, snow again rendered the Sand Springs Road impassable. Defendant Lamb allegedly refused to allow the Lincoln County Road Department to remove snow from either the Mail Summit or Sand Springs Roads any closer than 7 miles to Plaintiff's residence.

On January 28, 1993, Plaintiff informed Ed Wright, a Lincoln County Commissioner, of her need to obtain assistance from Lincoln County in order to have access to her ranch or to evacuate herself, her dogs and her livestock. Plaintiff claims that Wright promised assistance, but none was forthcoming.

It was now the beginning of February and snow continued to accumulate, yet the Sand Springs Road remained unplowed. On February 3, 1993, a friend of Plaintiff's allegedly contacted the Lincoln County road department and notified them of the impassible condition of the Sand Springs Road. As a result, Lincoln County sent a snowplow operator to survey the road, and on the next day, the road was plowed for the third time. On that day, Plaintiff gave Dave Shumway, the snowplow operator, three letters to be delivered to the members of the Lincoln County Board of Commissioners describing her predicament and the road conditions.

Snow continued to accumulate during the month of February, and Lincoln County did not plow the Sand Springs Road. Plaintiff alleges that her physical and emotional condition deteriorated, as she was apparently unable to obtain food and supplies. By February 28, 1993, Plaintiff was unable to care for herself, her livestock and her dogs. Plaintiff finally had to be assisted by a friend to Rachel, Nevada where she remained until May 25, 1993.

## II. *PROCEDURAL HISTORY*

On August 5, 1993, Plaintiff filed her original Complaint (# 1) alleging that Defendants deprived her of various constitutional rights

in violation of 42 U.S.C. § 1983. Specifically, Plaintiff alleged that Defendants' conduct: 1) deprived her of all viable use and enjoyment of her property in violation of the Fourteenth Amendment's due process clause ("Use and Enjoyment due process claim"); 2) deprived her of her legal entitlement to have the roads in question plowed also in violation of the Fourteenth Amendment's due process clause ("Legal Entitlement due process claim"); 3) denied her equal protection; and 4) deprived her of her right to travel and freely associate under the First Amendment. Plaintiff also asserted a claim against Defendant Floyd Lamb in his individual capacity and a state law claim for intentional infliction of emotional distress.

In a prior Order (# 22) addressing a Motion to Dismiss filed by Defendants, the Court dismissed Plaintiff's Use and Enjoyment due process claim, both to the extent Plaintiff attempted to allege a procedural due process violation and to the extent she attempted to allege a substantive due process violation,[2] but granted leave to amend the procedural due process claim.[3] The Court also dismissed Plaintiff's equal protection and First Amendment claims, but granted leave to amend to clarify the equal protection claim. The Court, however, refused to dismiss Plaintiff's Legal Entitlement due process claim.

Thereafter, on March 31, 1994, Plaintiff filed her Second Amended and Supplemental Complaint (# 25) in which she again sought an injunction to force Lincoln County to plow the subject roads. She also realleged a violation of procedural due process in that she had a legal entitlement to have the roads plowed into her Nye County property, and again advanced her substantive due process claim based upon the right to receive public services such as snow removal. She also reasserted her equal protection claim and her state law claim of intentional infliction of emotional distress. Defendants now seek summary judgment on Plaintiff's federal causes of action.

### III. SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91

---

**2.** In dismissing this claim, the Court relied upon the decision of the United States Supreme Court in *DeShaney v. Winnebago County Department of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In her Opposition (# 51) to Defendants' Motion for Summary Judgment, Plaintiff argues that the Court should reconsider this ruling in light of the "danger creation exception" to *DeShaney* which essentially holds that if the affirmative conduct of the state actor placed the individual in danger, *DeShaney* does not preclude a § 1983 action based upon a due process violation. This argument, which Plaintiff should have raised in her Opposition to Defendants' Motion to Dismiss, is inapposite, however. "The 'danger creation' basis for a claim ... necessari-

ly involves affirmative conduct on the part of the state in placing the plaintiff in danger." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993) (citation omitted). Contrary to Plaintiff's assertion, the Court finds nothing in the record to support the argument that it was Defendants conduct that placed Plaintiff in any peril.

**3.** Plaintiff, however, failed to reallege this claim in her Second Amended and Supplemental Complaint (# 25). The Court, therefore, considers this claim abandoned.

L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

If the party seeking summary judgment meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The trilogy of Supreme Court cases cited above establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). *See also Avia Group Int'l, Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1560 (Fed.Cir.1988).

## IV. *DISCUSSION*

### A. *Due Process Claims*

Plaintiff argues that Defendants' failure to provide snow plow services on the dates in question constituted a deprivation of her property rights in violation of substantive and procedural due process. Defendants contend that Plaintiff's due process claims must fail because Plaintiff has no constitutionally protectable property interest to have the snow removed from remote Nye County roads.

The Due Process guarantees of the Fifth and Fourteenth Amendments provide that a person may not be deprived of life, liberty, or property without due process of law. These guarantees, however, "apply only when a constitutionally protected liberty interest or property interest is at stake," *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir.1993), *cert. denied*, ——— U.S. ———, 115 S.Ct. 354, 130 L.Ed.2d 309 (1994), and demonstrating the existence of a constitutionally protected liberty or property interest is a threshold requirement to a substantive or procedural due process claim. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir.1994).

While the Due Process Clause provides protection for certain property or liberty interests, property interests themselves are not created by the Constitution. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Therefore, the first step in the Court's analysis is to decide whether Plaintiff had a property interest in having the subject roads plowed, and if so whether it is the type

of property interest the Due Process Clause protects.

Plaintiff suggests that she maintains a protected property right in having the subject roads plowed by virtue of Nevada law or, alternatively, an interlocal contract existing between Nye and Lincoln Counties for snow removal. For the reasons set forth below, however, the Court finds that neither Nevada law nor the contract between Nye and Lincoln Counties creates a constitutionally protectable property interest sufficient to invoke the safeguards of the Due Process Clause.

■ Where a plaintiff looks to state law to provide a basis for a property interest, "[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Wedges/Ledges,* 24 F.3d at 62 (citing *Association of Orange County Deputy Sheriffs v. Gates,* 716 F.2d 733, 734 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984)). "[A] statute will create an entitlement to a governmental benefit either if the statute sets out conditions under which the benefit *must* be granted or if the statute sets out the *only* conditions under which the benefit may be denied." *City of Santa Clara v. Andrus,* 572 F.2d 660, 676 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978) (emphasis in original); *Allen v. City of Beverly Hills,* 911 F.2d 367, 370 (9th Cir.1990) (quoting this language).

■ Plaintiff argues that various provisions of the Nevada Revised Statutes created a property interest in snow removal services. Specifically, Plaintiff cites to N.R.S. §§ 404.080, 404.120–.150, 403.570, 403.170, 403.180, 403.190, and 277.180(1) as providing such a property interest. The Court has examined the statutes cited by Plaintiff and concludes that there is not even a hint in any of the language contained therein that remotely suggests a property interest in snow removal has been created. These statutes contain very general language regarding the designation and maintenance of certain county roads. Even the most strained interpretation reveals utterly nothing in the Nevada statutes to suggest the type of mandatory

obligation on the part of the County required to give rise to a protected property interest.

■ Nor does Plaintiff's argument that a property interest was created by virtue of an interlocal contract existing between Nye and Lincoln Counties for snow removal support Plaintiff's due process claim. Plaintiff claims that she is a third party beneficiary of the contract between Lincoln County and Nye County for snow removal, and as such, she has a property interest by virtue of this status. Even if the Court were to assume for the moment that an enforceable contract existed between Lincoln and Nye Counties, and that is in dispute, the Court finds that any benefit Plaintiff may have derived therefrom does not rise to the level of a constitutionally protected property interest.

■ Although every contract may confer some legal rights under state law, "that fact alone need not place all contracts within federal due process protection." *San Bernardino Physicians' Servs. Medical Group v. County of San Bernardino,* 825 F.2d 1404, 1408 (9th Cir.1987). Thus, while state law or some other independent source provides the underlying substantive interest, federal constitutional law determines whether the interest is of the kind protected by the Fourteenth Amendment. *Portman v. County of Santa Clara,* 995 F.2d 898, 905 (9th Cir. 1993); *San Bernardino Physicians' Servs. Medical Group,* 825 F.2d at 1408.

■ "It has long been recognized that there generally exists no constitutional right to basic governmental services, such as fire and police protection." *Westbrook v. City of Jackson, Mississippi,* 772 F.Supp. 932, 935 (S.D.Miss.1991) (citing *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) ("As a general matter, a State is under no constitutional duty to provide substantive services for those within its border"); *Wells v. Walker,* 852 F.2d 368, 370 (8th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989) (as a general rule, members of the public at large have no constitutional right to be protected by the state against harm inflicted by third parties); *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984) (same)). The rationale underlying

this conclusion was persuasively explained as follows by the Seventh Circuit:

> The modern expansion of government has led to proposals for reinterpreting the Fourteenth Amendment to guarantee the provision of basic services such as education, poor relief, and, presumably, police protection, even if they are not being withheld discriminatorily. *See, e.g.,* Michelman, Foreword: On Protecting the Poor Through the Fourteenth Amendment, 83 Harv.L.Rev. 7 (1979). To adopt these proposals, however, would be more than an extension of traditional conceptions of the due process clause. It would turn the clause on its head. It would change it from a protection against coercion by state government to a command that the state use its taxing power to coerce some of its citizens to provide services to others.

*Jackson v. City of Joliet,* 715 F.2d 1200, 1203–04 (7th Cir.1983), *cert. denied,* 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984). Plaintiff's claim of entitlement to snow removal services is precisely the type of basic service which the federal courts have refused to bring within the purview of the Fourteenth Amendment.

■ The Court does not doubt for a moment that Plaintiff's need and desire for snow removal services is significant. A unilateral expectation for these services, however, no matter how sincere or firmly held, is simply insufficient. As the Supreme Court noted in *Roth, supra:* "To have a property interest in a benefit, a person must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709. Plaintiff has failed to demonstrate such a legal entitlement. Her due process claims must therefore fail and, to that extent, Defendants' Motion for Summary Judgment will be granted.

### B. *Equal Protection Claim*

Plaintiff also claims that she was denied equal protection in violation of the Fourteenth Amendment when some roads in the area were plowed to allow cattle ranchers to feed and care for their livestock while the road leading to her residence was not. Plaintiff does not argue that she was denied equal protection because she was discriminated against in favor of the ranchers without a rational basis. Rather, she argues that this treatment by Defendants violated her equal protection rights by advancing the welfare of livestock over that of a human being. Not surprisingly, Plaintiff fails to cite one case for the novel proposition that an equal protection violation will lie where a plaintiff alleges that the interests of livestock have been made superior to those of a human being.

■ Plaintiff asserts that she was discriminated against based upon her status as a human being. The Court is unaware of any cases holding that human beings are a suspect class, at least for purposes of equal protection analysis. Thus, because no fundamental right is implicated, the government action violates equal protection only if it contains a classification "so unrelated to the achievement of any combination of legitimate purposes that the Court can only conclude that [the government's] actions were irrational." *Kawaoka v. City of Arroyo Grande,* 796 F.Supp. 1320, 1330 (C.D.Cal.1992), *aff'd,* 17 F.3d 1227 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994) (quoting *New Orleans v. Dukes,* 427 U.S. 297, 301–05, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976)). To satisfy this low-scrutiny test, Plaintiff must show that her property was treated differently than other similarly situated property, and that there was no rational basis for such disparate treatment. *Kawaoka,* 796 F.Supp. at 1330 (citing *Jacobs, Visconsi & Jacobs v. City of Lawrence,* 927 F.2d 1111 (10th Cir.1991)). As Plaintiff has failed to put forth any evidence from which the Court could find that Lincoln County's actions were irrational, and there is nothing in the record to support a such a finding, Defendants' Motion for Summary Judgment will be granted on this claim as well.

### C. *Qualified Immunity*

Defendant Floyd Lamb asserts that to the extent he is sued in his individual capacity, he is entitled to qualified immunity for his

actions. Because the Court has concluded, however, that Plaintiff has failed to establish the existence of a constitutional tort, the issue of Lamb's immunity need not be reached. *See Westbrook, supra,* 772 F.Supp. at 935.

D. *State Law Claim*

Plaintiff's only remaining claim is a state law action for intentional infliction of emotional distress. If the federal claims against a party are dismissed before trial, the pendent state law claims should also be dismissed. *Schultz v. Sundberg,* 759 F.2d 714, 718 (9th Cir.1985); *Jones v. Community Redevelopment Agency,* 733 F.2d 646 (9th Cir.1984). All of the federal claims sought by Plaintiff under the present Complaint have been dismissed. As such, the remaining state law claims presented should also be dismissed without prejudice. *Copeland v. Desert Inn Hotel,* 99 Nev. 823, 673 P.2d 490, 492 (1984).

IT IS THEREFORE ORDERED THAT Defendants' Motion for Summary Judgment (# 46) is Granted.

IT IS FURTHER ORDERED THAT because all of the federal claims sought by Plaintiff under the present Complaint have been dismissed, Plaintiff's state law claim for intentional infliction of emotional distress should also be dismissed without prejudice.