**G & G FIRE SPRINKLERS, INC., Plaintiff–Appellee,**

v.

**Victoria L. BRADSHAW, an individual, in her capacity as Labor Commissioner of the State of California; Lloyd W. Aubry, Jr., Director; Daniel Dellarocca, an individual, in his official capacity as Deputy Labor Commissioner of the State of California; Roger Miller, an individual in his official capacity as Deputy Labor Commissioner of the State of California; Rosa Frazier, an individual in her capacity as Deputy Labor Commissioner of the State of California, Defendants–Appellants.**

**G & G FIRE SPRINKLERS, INC., Plaintiff–Appellee,**

v.

**Victoria L. BRADSHAW, an individual, in her official capacity as Labor Commissioner of the State of California; Lloyd W. Aubry, Jr., an individual, in his official capacity as Director of the Department of Industrial Relations of the State of California; Daniel Dellarocca, an individual, in his official capacity as Deputy Labor Commissioner of the State of California; Roger Miller, an individual in his official capacity as Deputy Labor Commissioner of the State of California; Rosa Frazier, an individual, in her official capacity as Deputy Labor Commissioner of the State of California; Division of Labor**

Standards Enforcement, an agency of the State of California; Department of Industrial Relations, an agency of the State of California, Defendants–Appellants.

Nos. 95–56639, 96–55194.

United States Court of Appeals, Ninth Circuit.

No. 95–56639 Argued and Submitted May 7, 1996.

No. 96–55194 Submitted Aug. 27, 1997.*

Decided Feb. 3, 1998.

Amended Sept. 10, 1998.

* The panel finds this case appropriate for submission without argument pursuant to Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

Thomas S. Kerrigan, State of California Department of Industrial Relations, Los Angeles, California for defendants-appellants.

Stephen A. Seideman, Levin, Stein, Chyten & Schneider, Los Angeles, California, for plaintiff-appellee in No. 95–56639.

Thomas J. McDermott and Harvey Rochman, Manatt, Phelps & Phillips, Los Angeles, California, for plaintiff-appellee in No. 96–55194.

William P. Gemmill, Gascou, Gemmill & Thornton, Los Angeles, California, for plaintiff-appellee on rehearing.

Scott A. Kronland, Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, California, for amici curiae on rehearing.

Before: REINHARDT, KOZINSKI and HAWKINS, Circuit Judges.

Opinion by Judge MICHAEL DALY HAWKINS; Dissent by Judge KOZINSKI.

MICHAEL DALY HAWKINS, Circuit Judge:

This case requires us to decide whether certain California Labor Code provisions, authorizing the state to seize money and impose penalties for a subcontractor's failure to

comply with prevailing wage requirements, violate the Due Process Clause of the Fourteenth Amendment because no notice or hearing is required before such adverse action is taken. Specifically, Victoria L. Bradshaw, Labor Commissioner of the State of California, and others appeal the district court's order granting summary judgment in favor of G & G Fire Sprinklers, Inc. ("G & G"), the public works subcontractor here, and permanently enjoining Bradshaw from enforcing California Labor Code §§ 1727, 1730–33, 1775, 1776(g) and 1813 against G & G for alleged violations of California prevailing wage laws. We hold that G & G has standing to maintain this action and that due process requires either a pre- or post-deprivation hearing, but that the district court's injunction should be narrowed to apply only until such time as the state may adopt by regulation or otherwise appropriate procedures affording such hearings.

## I. Facts

### A. *The Parties*

Appellee G & G is a fire protection company that installs fire sprinkler systems. G & G has performed numerous public works projects as a contractor or subcontractor. Appellants are the California Division of Labor Standards Enforcement ("DLSE"), Department of Industrial Relations, and officials thereof (collectively "the state").

### B. *The California Labor Code*

The California Labor Code requires contractors and subcontractors on public works projects to pay a state-determined prevailing wage to all their workers. Cal. Lab.Code § 1771. To enforce this requirement, the body awarding the contract ("the awarding body") is allowed to withhold funds from a prime contractor should it determine that the contractor or one of its subcontractors has violated the prevailing wage law. § 1727. The state is authorized to withhold an amount equal to the total amount that all the workers have been underpaid, as well as up to $50 per day, per worker in fines for each instance in which the contractor fails to pay the prevailing wage. § 1775. A withholding order can only be issued after a full investi-

gation by DLSE or the awarding body, unless the withholding is from the final payment to be made to the prime contractor. § 1727. If the violator is a subcontractor, the prime contractor is authorized to withhold an equivalent amount from its payments to the subcontractor. § 1729. All of these provisions must be incorporated into all public works contracts. Cal. Admin. Code, Title 8, § 16430.

A notice to withhold to an awarding body is a standard procedure utilized by DLSE, but no notice or hearing is required prior to its issuance. DLSE is not required to produce any evidence of a violation of the law, no specific standard is applied in determining whether to issue a notice to withhold, and no procedure exists to guard against the issuance of improper or excessive notices to withhold. Moreover, while DLSE has no formal procedures for conducting investigations, as a general rule, information from a witness/informant must be verified with an independent source. In addition, recommendations to withhold must be reviewed by a supervisor.

The exclusive remedy after withholding is a lawsuit by the prime contractor against the awarding body for recovery of the money withheld. §§ 1730–33. Such a suit must be filed within 90 days of the withholding, and the contractor bears the burden of establishing that there was no violation. § 1733. DLSE may defend the lawsuit upon request by the awarding body. *Id.* Subcontractors are not given the right to bring suit, although a prime contractor is allowed to assign its right to sue. *Id.* If a suit is not brought within 90 days, the state disburses the withheld funds to the underpaid workers; if a suit is brought within this period, then the money is held in escrow until its resolution. § 1731.

### C. *The Dispute*

This case arose when DLSE issued three withholding notices against G & G for a total of at least $120,000. The notices were for three separate projects on which G & G had

served as a subcontractor.[1] The awarding bodies for each of the projects have withheld money from the prime contractors, who in turn have withheld payment from G & G. No evidence in the record explains in detail the basis for the state's decision to withhold funds from G & G.

The issuance of the notices to withhold has a substantial detrimental effect on G & G's ability to do business, as their effect is to reduce, or cut off, payments for work performed and to damage G & G's reputation in the industry. Inasmuch as G & G intends to perform further public works projects in the future, the issuance of additional improper notices to withhold also could impair G & G's cash flow and ability to do business.

G & G filed this action for declaratory and injunctive relief, claiming that the issuance of the notices to withhold without a prior hearing constitutes a deprivation of property without due process of law in violation of the Fourteenth Amendment. The state responded with a motion to dismiss, and G & G later filed a motion for summary judgment. The district court granted G & G's motion for summary judgment and denied the state's motion to dismiss. The district court's judgment declares sections 1727, 1730–33, 1775, 1776(g) and 1813 of the California Labor Code and the state's practices thereunder unconstitutional and enjoins the state from enforcing these sections against G & G.

## II. Standing

We first address whether G & G has standing to maintain this action.[2] The state argues G & G does not have standing because subcontractors lack privity of contract with the state under the Labor Code and because the state withheld monies from the prime contractors, not G & G, thus precluding any direct causal connection between G & G's alleged injury and the state's conduct.

Standing is a question of law that we review de novo. *Sahni v. American Diversified Partners*, 83 F.3d 1054, 1056 (9th Cir.1996). To establish standing, a federal plaintiff must show (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

To establish injury in fact, a plaintiff must demonstrate that the injury is "concrete and particularized" and that it is "actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130. The injury here is both concrete and actual. As a result of the state's withholding procedures, G & G has not been paid approximately $120,000, to which it claims it is entitled. G & G meets the first requirement for standing.

A plaintiff must also show that the injury "fairly can be traced to the challenged action of the defendant" and that it does not result "from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The Supreme Court detailed the methodology to be followed in determining causation in a case of this type:

> When the suit is one challenging the legality of government action or inaction, the

---

1. Withholding notices had also been issued on projects on which G & G had served as the prime contractor, but those notices were withdrawn before this suit ensued.

2. We note at the outset that whether a party has standing is a separate question from whether a party has an interest protected by the Due Process Clause—here, a property interest. "Standing to bring a state court claim of deprivation of property rights does not establish a protected property interest." *Kim Constr. Co. v. Board of Trustees*, 14 F.3d 1243, 1249 (7th Cir.1994).

Moreover, that a party has no constitutionally protected property interest under a statute does not mean that it has no standing to bring a claim under that statute. *See id.*

Accordingly, cases such as *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980), and *San Bernardino Physicians' Servs. Med. Group, Inc. v. County of San Bernardino*, 825 F.2d 1404 (9th Cir.1987), which the state cites to argue that G & G has no standing, are inapposite because they address whether parties have protectible property interests, not standing.

nature and extent of the facts that must be averred (at the summary judgment stage) ... in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment ... will redress it. When ... a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction ... it becomes the burden of the plaintiff to adduce facts showing that those choices [of the third party] have been or will be made in such manner as to produce causation and permit redressability of injury.

*Lujan*, 504 U.S. at 561–62, 112 S.Ct. 2130 (emphasis in original).

■ The state contends that G & G cannot establish causation because this case involves the state's regulation of a third party, the prime contractors, whose own independent choices are an intervening cause of G & G's injury. Specifically, the state cites California Labor Code § 1729, which states that "[i]t shall be *lawful* for any contractor to withhold from any subcontractor under him sufficient sums to cover any penalties withheld from him" (emphasis added), in support of its argument that the prime contractors were not required to withhold money from G & G and that their decision to do so was the true cause of G & G's injury.

This argument elevates form over substance. The state's action here is targeted at G & G; the prime contractors' only role in the dispute is that of a conduit, not some third party whose independent choices caused G & G's injury. The state investigated *G & G*'s conduct, not the prime contractors', and the withholding notices explicitly named G & G as the violator of the California Labor Code. G & G was clearly the "object of the action" as the Supreme Court used the term. As such, the state's conduct is the cause of G & G's injury: the money would not have been withheld but for the state's actions.[3] That was the intended result of the state's action, in accordance with the overarching purpose of its regulatory scheme to ensure that prime contractors and subcontractors pay their workers the state-determined prevailing wage.

■ Even if we somehow assume that G & G is not itself the object of the action, but is indirectly affected by the state's regulation of the prime contractors, our conclusion would be the same. That the harm to G & G may have resulted indirectly does not in itself preclude standing. As the Supreme Court stated in *Warth v. Seldin*, 422 U.S. at 505, 95 S.Ct. 2197:

When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights.

Furthermore, G & G can show that the prime contractors' (third party) choices "have been or will be made in such a manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562, 112 S.Ct. 2130. Here, the prime contractors have withheld payment from G & G, completing the causal link between G & G's injury and the state's action and permitting redressability. Accordingly, G & G's injury can be directly traced to the state's conduct and the

---

**3.** This case differs from those in which the Supreme Court has found the requisite "but for" causation lacking. *See, e.g., ASARCO, Inc. v. Kadish*, 490 U.S. 605, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (individual taxpayers and teachers' organization lacked standing to challenge Arizona land management statute when only alleged injuries were increased taxes and reduced school funding because of impossibility of showing statute had direct causal impact on taxes or school funding); *Simon*, 426 U.S. at 26, 96 S.Ct. 1917 (plaintiffs lacked standing to sue due to inability to establish causal relationship between IRS ruling and hospitals' decisions not to provide treatment); *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (plaintiffs asserting inability to find homes in city based on exclusionary zoning practices failed to establish causation).

second requirement for standing is also satisfied.

■ To meet the third requirement for standing, a plaintiff must show that his injury will be redressed if he prevails in his legal action. In this case, G & G's injury will be redressed by this suit because if G & G prevails, the withheld money will be released to the prime contractors, who will be obligated by contract to pay it to G & G.

That G & G as a subcontractor lacks privity of contract with the state only bolsters our conclusion. Under California's Labor Code, subcontractors cannot sue the state for withholding funds; only prime contractors can. A subcontractor theoretically could sue the prime contractor, but the latter has a defense of withholding the funds pursuant to state law. In addition, the Labor Code does not grant subcontractors the right to any type of hearing to contest a withholding. Therefore, if a prime contractor chooses not to contest a withholding or to assign its rights to sue to the subcontractor, the subcontractor is left holding a quite empty bag.[4]

G & G has standing to maintain this suit.

### III. Due Process Claim

■ A due process claim has two elements: (1) a deprivation of a protectible interest, and (2) denial of adequate procedural protections. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). We consider each of these elements in turn.

#### A. Protectible Interest

■ To determine whether G & G has suffered a deprivation of a protectible inter-

est, we must evaluate (1) what type of interest has been deprived, and (2) whether that interest is protected by the Due Process Clause. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). G & G's interest arises from its public works contract; it has a property interest in being paid in full for the construction work it has completed. See Sniadach v. Family Finance Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (holding that Wisconsin's garnishment procedure allowing wages to be frozen upon request of creditor's lawyer constituted "obvious" deprivation of property). The state's withholding of over $120,000 has deprived G & G of its interest in full payment for services rendered.

■ The state quite properly notes, however, that not all property interests are protected by the Due Process Clause. While both federal and California law recognize that a contract with the state can create a constitutionally protected property interest, Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Walker v. Northern San Diego County Hosp. Dist., 135 Cal.App.3d 896, 185 Cal.Rptr. 617, 620 (1982), not all public contracts give rise to a protectible due process interest. See San Bernardino Physicians' Servs. Med. Group, Inc., 825 F.2d at 1408. Indeed, because any breach of contract claim against the state logically can be construed as a due process claim, " 'we must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into federal courts.' " Id. (quoting Brown v. Brienen, 722 F.2d 360, 364 (7th Cir.1983)).

---

**4.** The state cites Loyd v. Stewart & Nuss, Inc., 327 F.2d 642, 645–46 (9th Cir.1964), for the proposition that a subcontractor has no property right to funds withheld by an awarding body and hence has no standing to challenge such a withholding. We reject this argument for several reasons.

First, Loyd is a bankruptcy case holding that amounts withheld from a prime contractor by the state upon request of a trucking service doing work for a subcontractor did not constitute property owned or possessed by the debtor subcontractor and hence the bankruptcy court had no summary jurisdiction over the property. The case does not even involve constitutional issues,

let alone due process concerns, and it never discusses standing. Second, even if we were to deem Loyd remotely relevant to this case, its decision that the subcontractor debtor had no property right in the debt owed to the prime contractor by the state sheds no light on whether a subcontractor has a protectible property interest in wages withheld from it pursuant to state law. In fact, Loyd acknowledges that the subcontractor and the trucking service "both possessed the right to claim against the fund, but only in the event they were not paid by their respective principal obligors." Id. at 646. Here, G & G was not paid by its respective principal obligor, the prime contractor, and it is asking for an opportunity to contest that deprivation.

Even though every contract may confer some legal rights under state law, that fact alone need not place all contracts within federal due process protection. Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.

*Id.* at 1408–09 (internal quotations omitted).

■ Drawing on these principles, the state asserts that because the withholding procedure at issue is contained in G & G's contract, this case is nothing more than a contractual dispute that does not rise to the level of a constitutional claim. Moreover, the state argues that construing this case to present a constitutional claim would result in the "federalization" of state contract law by giving G & G and all others who contract with the state an opportunity to have their grievances reviewed in federal court when they should be confined to their contractually bargained-for remedies under state law. This argument, however, misses the mark. Unlike the cases cited by the state, this case does not involve a breach of contract claim or a challenge to the contract itself.[5] G & G concedes that the express terms of the contract grant the state the authority to withhold funds for wage violations; the withholding is not a breach of contract.[6] Instead, G & G challenges the constitutionality of several provisions of the California Labor Code as violative of its federal due process rights.[7]

Those provisions, incorporated by state law into all public works contracts, authorize the state to withhold payment of money owed to contractors or subcontractors for alleged violations of the state prevailing wage law. This case thus involves a direct constitutional challenge to the state's regulatory power as embodied in these statutes, not a mere contractual dispute.

The state, relying on *O'Bannon*, 447 U.S. at 773, 100 S.Ct. 2467, also contends that G & G's property interest is not protectible because this case involves the indirect effects of state action. In *O'Bannon*, the Supreme Court reiterated the principle that "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." 447 U.S. at 789, 100 S.Ct. 2467. Specifically, the Court held that residents of a nursing home that had its license revoked did not have a right to a hearing because the revocation "did not directly affect the patients' legal rights or deprive them of any constitutionally protected interest in life, liberty, or property." *Id.* at 790, 100 S.Ct. 2467. It further stated, "[T]he fact that the decertification of a home may lead to severe hardship for some of its elderly residents does not turn the decertification into a governmental decision to impose that harm." *Id.* at 789, 100 S.Ct. 2467. In a footnote, however, the Court expressly noted:

We of course need not and do not hold that a person may never have a right to a hearing before his interests may be indirectly affected by government action.

---

**5.** All the cases cited by the state to support its argument that G & G's interest is not constitutionally protected involve due process claims arising from an alleged breach of contract. *See, e.g., Unger v. National Residents Matching Program,* 928 F.2d 1392, 1399 (3d Cir.1991) (termination of residency program after plaintiff's acceptance into program failed to implicate due process rights because contract with university hospital did not confer protected status and did not include provision of for-cause termination only); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 968–69 (2d Cir.1988) (contractor alleging state breached contract by withholding funds pending result of criminal investigation failed to establish due process claim because neither contract nor state law contained for-cause termination provision or right to prompt payment); *San Bernardino Physicians' Servs. Med. Group, Inc.,* 825 F.2d at 1406 (physicians' group's chal-

lenge to termination of service contract with state did not implicate due process interest because status of employees depended entirely upon their contracts with group, not upon contracts between group and state).

**6.** G & G points out that a prime contractor has none of the usual breach of contract remedies. It may not declare a material breach by the awarding body for withholding payments and it may not rescind the contract. The prime contractor must continue to perform, to pay for labor and materials, even if payments have been cut off. The exclusive remedy is a lawsuit. Cal. Labor Code §§ 1731–33.

**7.** G & G's complaint seeks declaratory relief from the "facial unconstitutionality of state laws."

Conceivably, for example, if the Government were acting against one person for the purpose of punishing or restraining another, the indirectly affected individual might have a constitutional right to some sort of hearing. But in this case the Government is enforcing its regulations against the home for the benefit of the patients as a whole and the home itself has a strong financial incentive to contest its enforcement decision; under these circumstances the parties suffering an indirect adverse effect clearly have no constitutional right to participate in the enforcement proceedings.

*Id.* at 789 n. 22, 100 S.Ct. 2467.

The state's reliance on *O'Bannon* is misplaced.[8] Unlike the nursing home residents in that case, G & G is the target of the state's action here. Hence there is no "indirect" governmental action despite the presence of the prime contractors in the chain of causation. Even if we were to accept the state's contention that its withholding of funds constitutes indirect action, such action would fall within the category expressly left open by the *O'Bannon* Court—action taken by the government against one party for the purpose of punishing or restraining another. Either way, we hold that G & G has suffered a deprivation of a protectible property interest as a result of the state's action.

**B.** *Process Due*

■ We now examine whether the state accorded G & G due process when it effected this deprivation. As a general rule, the Due Process Clause requires that individuals receive notice and a meaningful opportunity to be heard *before* the government deprives them of property. *United States v. James Daniel Good Real Prop.,* 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). Twenty five years ago, the Supreme Court announced an exception to this rule for "extraordinary situations where some valid gov-

ernmental interest is at stake." *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 378–79, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). More recently, the Court has refined the exception: "An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *Federal Deposit Ins. Corp. v. Mallen,* 486 U.S. 230, 240, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988). Over the years, the Court has broadened this exception considerably, frequently holding a post-deprivation hearing to be sufficient. *Compare Board of Regents,* 408 U.S. at 570 n. 7, 92 S.Ct. 2701 (describing use of exception as "rare"), *with e.g., Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (holding that state's interest in preserving integrity of sport of horse racing justifies lack of pre-deprivation hearing), *and Mallen,* 486 U.S. 230, 108 S.Ct. 1780 (holding that state's interest in maintaining public confidence in bank management justifies post-deprivation hearing for removal of bank manager).

■ Where extraordinary circumstances justify dispensing with a pre-deprivation hearing, however, a prompt post-deprivation hearing must be provided. *See Mallen,* 486 U.S. at 242, 108 S.Ct. 1780. In determining whether a post-deprivation hearing procedure is reasonably prompt, a court should "examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." *Id.*

■ Here, we have no doubt that the state's interest in ensuring the payment of

---

8. The other cases cited by the state are similarly inapposite. *See Castaneda v. United States Dept. of Agric.,* 807 F.2d 1478 (9th Cir.1987) (employee of convenience store who was fired after store was disqualified from food stamp program did not have right to hearing even though employee's fraudulent conduct was cause of termination); *Grove City College v. Bell,* 687 F.2d 684 (3d Cir.1982), *aff'd,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984) (students of college that refused to comply with requirements of federal student aid program did not have right to hearing before college's eligibility to receive student aid was revoked).

prevailing wages is sufficiently "important," *see Mallen*, 486 U.S. at 240, 108 S.Ct. 1780, to justify the withholding of funds pending the outcome of whatever kind of hearing may be afforded. Whether a hearing is before or after the giving of notice or the actual withholding is a matter for the state to determine on the basis of the practical considerations involved. *See, e.g., Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

■ In this case, however, subcontractors like G & G are afforded neither a pre-nor post-deprivation hearing when payments are withheld. Once the state determines that a violation of the prevailing wage law has occurred, it may withhold and disburse money directly to the workers and may impose fines both without providing any hearing at which the subcontractor might challenge the validity of the state's finding. Accordingly, subcontractors have no opportunity to be heard at a meaningful time in a meaningful manner. *See Fuentes*, 407 U.S. at 80, 92 S.Ct. 1983. This scheme violates the Due Process Clause of the Fourteenth Amendment.[9]

Although the decision as to what specific type of hearing will be afforded subcontractors may depend upon the factual circumstances, the state must, upon determining that a subcontractor has failed to pay prevailing wages, provide the contractor with a reasonably prompt hearing of some sort.[10] Pending the outcome of such a hearing, the state may withhold payments and penalty funds.[11]

## IV.  Other Issues Raised by the State

■ The state asserts that G & G's summary judgment motion was premature and hence should have been denied. Federal Rule of Civil Procedure 56(a) allows a motion

---

**9.** Cal. Lab.Code §§ 1730–33. The state's argument that due process is satisfied because an aggrieved party may bring a suit on the contract is unavailing. The state relies on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which held that in certain circumstances, a post-deprivation remedy under state law may fulfill the requirements of due process. We have stated, however, that "[w]e apply *Parratt* and *Hudson* only when the state administrative machinery did not and could not have learned of the deprivation until after it occurred, not when state officials acted pursuant to state policy and followed state procedures they believed were proper." *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir.1987) (internal quotations omitted). There is no question here, and the state does not contest, that the officials in this case acted pursuant to state policy and followed state procedures. Thus, *Knudson* forecloses the state's argument.

Moreover, we doubt the viability of a subcontractor's hypothetical suit against a prime contractor based on theories of breach of the covenant of good faith and fair dealing or equitable subrogation. The state and amici curiae have been unable to cite a single California case utilizing either theory in this context. The prime contractor could easily defeat any breach of covenant suit by demonstrating that its withholding of payment was authorized by law. *See* § 1729. And the facts of this case clearly do not meet the traditional elements of equitable subrogation.

*See Caito v. United California Bank*, 20 Cal.3d 694, 144 Cal.Rptr. 751, 576 P.2d 466, 471 (1978).

**10.** The question of when a post-deprivation hearing is adequate is separate from the question of what constitutes a sufficient post-deprivation procedure. The Supreme Court has made it clear that no single model is required in all cases, but that the nature of the deprivation and the other underlying circumstances dictate how much process is due. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)).

**11.** Contrary to the state's concerns, our decision today does not affect the validity of the Davis–Bacon Act, 40 U.S.C. §§ 276a *et seq.*, upon which the California law was patterned, because the Davis–Bacon Act provides for an extensive hearing and appeal structure through its implementing regulations. Within 30 days after a withholding, either the prime contractor or the subcontractor may request an administrative hearing to review the findings of the Administrator of the Wage and Hour Division of the Department of Labor. 29 C.F.R. § 5.11. The findings and rulings of the administrator may be appealed to an administrative law judge ("ALJ"), whose decision may be appealed to the Wage Appeals Board. *Id.* Ultimately, the Board's decision may be appealed to the federal court. 5 U.S.C. § 704.

for summary judgment to be made any time more than twenty days after commencement of the action. G & G's motion complied with this rule and with the notice requirements under Local Rule 7.4.[12] Moreover, the state did not file a Rule 56(f) declaration indicating why it needed discovery and the facts it hoped to discover. Given the state's receipt of adequate notice and an opportunity to respond to the motion, and its failure to file a Rule 56(f) declaration, the district court did not err in considering the summary judgment motion.

■ The state also contends that the individual defendants in this case are entitled to qualified immunity. "Qualified immunity is an affirmative defense to *damage liability;* it does not bar actions for declaratory or injunctive relief." *American Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir.1991) (internal quotation omitted) (emphasis added). Therefore, the individual defendants cannot claim qualified immunity as an affirmative defense to this action seeking declaratory and injunctive relief.

In addition, the district court did not err in denying the state's motion to dismiss. The state asserts that defects on the face of the complaint mandated its dismissal, but these alleged defects relate to issues such as standing, whether G & G was deprived of any constitutional right, and the qualified immunity defense. To the extent that we have decided all of these issues in G & G's favor, we affirm the district court's decision.

## V. The Injunction

The district court's judgment declared seven separate provisions of the California Labor Code unconstitutional and enjoined the state from enforcing any of those provisions against G & G. The state argues that the injunction is overbroad, and we agree.

■ When a federal court holds that a constitutional violation has occurred, the nature of the remedy it grants must be determined by the nature and the scope of the constitutional violation. *Milliken v. Bradley,* 433 U.S. 267, 280, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *see also Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established...."). In devising a remedy for constitutional violations by state agencies or officials, the court "must take into account the interests of state and local authorities in managing their own affairs, consistent with the Constitution." *Id.*

■ The district court's injunction here was overbroad in two respects. First, by invalidating *all* California Labor Code provisions relating to the withholding procedure, the district court created a remedy beyond what was required to address the constitutional violation—the state's failure to provide subcontractors like G & G a pre- or post-deprivation hearing as required by the Due Process Clause. Declaring the withholding provisions to be unconstitutional *as applied* is sufficient relief, as it allows the state to remedy the violation by adopting regulations providing for a pre- or post-deprivation hearing and to manage its own affairs in a manner consistent with the Constitution. *See Milliken,* 433 U.S. at 280, 97 S.Ct. 2749.

■ Second, the district court issued a permanent injunction prohibiting the state from enforcing the withholding provisions against G & G. The sweeping nature of this relief suggests that even if the state were to provide G & G with an extensive hearing procedure, it still would be enjoined from penalizing G & G for noncompliance and noncooperation, from obtaining the disputed funds from the awarding body, and from disbursing back wages to underpaid workers even if G & G did not contest the withholding. In short, the district court has simply prohibited the state from enforcing the prevailing wage law against G & G. The appropriate course in this case, given all the circumstances, would ·be to enjoin the state from enforcing the withholding provisions against G & G unless within a reasonable

---

**12.** G & G points out that it had filed essentially the same motion in a prior case, relying on the same authorities cited here. Thus, the state was aware of G & G's argument and the authorities on which it relied.

period it chooses to adopt procedures that afford G & G and others either a pre- or post-deprivation hearing, and to specify the time within which the state must do so.

We vacate the district court's injunction and remand for a modification in the manner stated.

## VI. Attorney Fees

In a companion appeal that has been submitted on the briefs and consolidated with this case, the state contests the district court's award of attorney fees to G & G following its grant of a permanent injunction in G & G's favor. Specifically, the state asserts that the district court abused its discretion in (1) determining that G & G was the prevailing party under 42 U.S.C. § 1988; (2) awarding attorney fees in light of G & G's alleged failure to satisfy the applicable criteria for such relief; and (3) awarding attorney fees to G & G for work performed in a previous lawsuit alleging identical claims for relief against the same defendants.

### A. *Procedural History*

In December 1994, G & G filed a lawsuit entitled *G & G Fire Sprinklers, Inc. v. Juan Garza et al.*, No. CV–94–8542 R ("the *Garza* lawsuit"). G & G's claims in the *Garza* lawsuit were the same as those presented in this case. The *Garza* lawsuit ended in a settlement agreement providing that G & G could refile the lawsuit if the state took further action against G & G, which is precisely what happened. The state's further action—a subsequent notice to withhold—prompted G & G to file the present action.

After the district court's grant of the injunction, the state filed a motion to stay the judgment in this Court, which was denied by a motions panel. Next, the district court issued an attorney fees award totaling $25,-830.28, which is the subject of this appeal. Subsequently, we reconsidered our previous denial of the motion to stay the judgment, granted a stay pending appeal, and set the case for an early hearing on the merits.

### B. *Prevailing Party*

■ The state argues that G & G is not a prevailing party under 42 U.S.C. § 1988 because while it received the relief it requested—an injunction—the staying of that injunction somehow nullified its legal effect or its mandate that the state alter its unlawful conduct. We reject this argument.

■ In *Farrar v. Hobby*, the Supreme Court held that to be considered a prevailing party, a plaintiff must "obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citations omitted). "In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12, 113 S.Ct. 566.

Here, G & G obtained an injunction from the district court, which materially altered the legal relationship between the parties by prohibiting the state from depriving G & G of property without any hearing. Certainly that change benefitted G & G and it is the prevailing party. *See Herrington v. County of Sonoma*, 883 F.2d 739, 744 (9th Cir.1989) (injunction, which appellate court upheld, rendered plaintiffs prevailing parties despite vacatur of damage award); *see also Baumgartner v. Harrisburg Hous. Auth.*, 21 F.3d 541, 543 (3d Cir.1994) (plaintiff who has received injunctive relief has prevailed for purposes of section 1988). That a stay was issued after the district court's grant of the injunction does not alter G & G's status as the prevailing party in the district court, as the district court's judgment is a statement of the rights of the parties unless and until that judgment is altered by a higher court. We have decided not to do so.

### C. *General Award of Fees*

The state also claims that the district court erroneously awarded attorney fees based solely on the declaration of Stephen A. Seideman ("Seideman declaration"), G & G's attor-

ney in the district court.[13] More specifically, the state argues that the Seideman declaration fails to discuss many of the factors discussed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69–70 (9th Cir.1975), to be considered by a district court in awarding attorney fees. These include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) the contingent or fixed nature of the fee; (7) the limitations imposed by the client or the case; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability; (10) the undesirability of the case; (11) the nature of the professional relationship with the client; and (12) awards in similar cases.

■ A district court, however, need not discuss each and every factor separately in making its decision. Rather, a strong presumption exists that the lodestar (reasonable number of hours times reasonable hourly rate) represents a reasonable fee, and "many of these factors usually are subsumed" within the lodestar calculation. *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir. 1987) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Thus, G & G only had to prove that its hourly rate was reasonable and that the total number of hours expended was reasonable. *See Dennis v. Chang,* 611 F.2d 1302, 1308 (9th Cir.1980) (award of attorney fees properly granted where based solely on skill and experience of counsel, rates of compensation "typical" of those charged by attorneys for comparable service, and reasonable amount of time spent).

■ Nevertheless, we agree with the state that G & G did not satisfy its "burden of producing satisfactory evidence, *in addition to the affidavits of its counsel,* that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan,* 815 F.2d at 1263 (em-

phasis added). The only evidence in the record about the hourly rate is Mr. Seideman's statement in his declaration that "[t]he hourly rates which I billed Plaintiff are equal to or less than those generally billed by attorneys in Los Angeles for similar services," and a similar statement with regard to the paralegal's hourly rates. These statements constitute an "insufficient basis from which to conclude that the rates requested are 'reasonable.'" *Southerland v. International Longshoremen's and Warehousemen's Union,* 845 F.2d 796, 801 (9th Cir.1987). Therefore, while G & G certainly is entitled to fees, we remand to the district court the issue of whether the claimed hourly rates are reasonable. On remand, both G & G and the State should be allowed to supplement the record with additional evidence so that the district court can reevaluate the reasonableness of the fees requested.

■ In addition, we do not find persuasive the state's related argument that the California Division of Labor Standards Enforcement ("DLSE") and the Department of Industrial Relations were not made parties to the present suit until the First Amended Complaint on September 7, 1995 and hence should not be held accountable for any fees incurred prior to that time. We hold that these parties are jointly and severally liable for the fees, given that the work involved aided in the preparation of the case against all the defendants and the case was not one in which the claims against each defendant varied or one defendant was more culpable than another. *See Woods v. Graphic Communications,* 925 F.2d 1195, 1207 (9th Cir. 1991) (defendant liable for fees previously incurred where fees assisted in preparing case against defendant and served as developmental work for case).

D. *Award of Fees for Work Performed in Previous Lawsuit*

■ The state asserts that the district court should not have allowed G & G to recoup attorney fees from the *Garza* lawsuit

---

**13.** The state does not dispute any specific items, such as the services provided or the hourly rate, or the total amount of fees; it simply asserts that

G & G's evidence was not sufficient to support an award of fees.

given that it did not prevail in that lawsuit. We uphold the district court's decision.

In *Webb v. Board of Educ.*, 471 U.S. 234, 243, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), the Supreme Court affirmed a district court's decision to deny attorney fees for time spent pursuing optional administrative remedies, specifically school board proceedings. But the Court noted that the petitioner in that case "made no suggestion below that any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement," *id.*, suggesting that if that had happened, maybe the result would have been different. We followed the Supreme Court's lead in *Rock Creek Ltd. Partnership v. State Water Resources Control Bd.*, 972 F.2d 274, 279 (9th Cir.1992), holding that a sponsor of a hydroelectric project was not entitled to attorney fees under §§ 1983 and 1988 for administrative proceedings before FERC. We reasoned that the FERC proceeding was not a condition precedent to plaintiff's entry to federal court, nor was it a part of a continuing federal court action. Because the FERC proceeding was not related or dependent, it could not form the basis for attorney fees. *Id.*

Cases from other circuits have addressed similar fee issues in non-administrative contexts. For example, the Third Circuit held in *Keenan v. City of Philadelphia*, 983 F.2d 459, 474 (3d Cir.1992), that the district court did not abuse its discretion in including the time spent in labor arbitration in its fee calculation. It based its decision on the following interpretation of *Webb* by the Third Circuit: "[F]or the time spent pursuing optional administrative proceedings properly to be included in the calculation of a reasonable attorney's fee, the work must be 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). In addition, the Eighth Circuit briefly addressed a similar situation in *Perkins v. Cross*, 728 F.2d 1099, 1100 (8th Cir.1984), an action by picketers against municipal officials for violation of their civil rights. The court held that fees could be awarded for any "time the lawyer spent defending the plaintiffs in the original municipal court proceeding to the extent, if any, that research or investigation done in connection with that proceeding proved directly relevant to the successful prosecution of [their] later civil rights claims." *Id.*

Here, G & G made a showing that the work done in the *Garza* lawsuit was directly related to the present action—the allegations in that suit were identical to those made here. Counsel for G & G stated that the legal research and analysis performed in *Garza* were necessary for this action and accordingly saved him from expending more time on this lawsuit. Thus, unlike the *Rock Creek* case, the prior proceeding here was related to the present action. The two can even be viewed as a continuum of proceedings necessary to achieve the relief finally granted, given that the *Garza* case ended in a settlement stating that if the state took further action, G & G could refile the lawsuit, which is what happened. Moreover, caselaw reveals no requirement that a party must have prevailed in a prior proceeding to use that as a basis for attorney fees in another action.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART. Costs to Appellee G & G Fire Sprinklers, Inc.

KOZINSKI, Circuit Judge, dissenting.

In *San Bernardino Physicians' Services Medical Group v. County of San Bernardino*, 825 F.2d 1404 (9th Cir.1987), we held that "[i]t is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." *Id.* at 1408 (footnote omitted). While we recognized that any contract with the state gives rise to what could be characterized as a property interest, we held that this alone is not a basis for invoking the protections of due process. Rather, the interest in question must fall within a narrow category that might fairly be characterized as a civil right, *see id.* at 1409, a right in public employment being the quintessential

example. *See id.* (citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). *San Bernardino* said that "construction contracts [and] purely material supply contracts"—contracts like the one we have here—do *not* create rights protected by the due process clause. *Id.* at 1410.

The majority abandons *San Bernardino*'s nuanced framework in favor of a categorical approach that turns every right to receive payment on a public works contract into a property right protected by due process: "G & G's interest arises from its public works contract; it has a property interest in being paid in full for the construction work it has completed." Maj. op. at 901. The opinion thus conflicts with *San Bernardino*, as well as the opinions of two other circuits. *See Mid–American Waste Sys., Inc. v. City of Gary*, 49 F.3d 286, 291 (7th Cir.1995); *Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir. 1988); *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir.1988).

It is also very bad policy. The state here is engaged in a commercial activity; it holds no special sway over other parties by virtue of its regulatory powers. In carrying out its project, the state has bargained for the construction to be done according to plan, on schedule, and consistent with health and safety codes; these are ordinary terms just like the ones private parties put into their construction contracts. The state has also bargained for a more exotic term, namely that contractors and subcontractors pay a prevailing wage to their employees. While this differs from what ordinarily appears in private construction contracts, it is not an exercise of the state's regulatory power; rather, it is a term that any private party could equally well put into its contract. If the contractor or subcontractor doesn't like the term, he can refuse to do business with the state.[1]

Here the state determined that G & G did not comply with its prevailing wage obligation, and thus withheld payments. This is no different from a builder's refusal to make progress payments when he discovers (or believes he has discovered) a failure of performance on any other term of a standard construction contract—for example, that the plumbing isn't up to code. Withholding payments under such circumstances is the standard remedy. Even if the general contractor were to take the position that the subcontractor could not recover from it because of Cal. Labor Code § 1729, *see* maj. op. at 904 n.9, the subcontractor would be able to proceed against the state. Labor Code § 1733 provides that suit may be brought by the contractor or the contractor's assignee against the awarding body to recover sums withheld. If the contractor refuses to assign its right to sue for the money withheld to the subcontractor, the subcontractor could sue under the theory of equitable subrogation, which the California Supreme Court has held "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *Caito v. United California Bank*, 20 Cal.3d 694, 704, 144 Cal.Rptr. 751, 576 P.2d 466 (1978) (quoting *Rhine v. Kemmerrer*, 114 Cal.App.2d 810, 814, 251 P.2d 345 (1952)) (internal quotation marks omitted). This is a run-of-the-mill contract dispute just like thousands routinely handled by the state courts without federal intervention.

In lieu of this common sense solution—which also complies with binding precedent—the majority invokes the full panoply of federal due process, including the requirement of a pre-deprivation or prompt (whatever that litigation-inviting term means) post-deprivation hearing, whenever the state wishes to withhold payments for what it believes is defective performance under the contract. While the opinion addresses only the prevailing wage term, its logic carries much farther: If the state discovers any other type of breach—for example, failure to complete the project on time or to comply with applicable safety codes—it must provide such a hearing as an added price for the standard remedy of

---

1. That the prevailing wage term appears in the California Labor Code doesn't matter. No one is forced to comply unless he agrees to do business with the state.

withholding payment. This gravely burdens the state's most potent remedy for dealing with recalcitrant contractors and subcontractors. Why the state should be saddled with this yoke when it engages in the purely commercial activity of construction—a burden not suffered by private builders—is beyond me.[2] *San Bernardino* clearly teaches that commercial contract rights must be vindicated in state court using state remedies. By ignoring this teaching the majority creates not just an intra-circuit and inter-circuit conflict but also a wholly unwarranted burden on the thousands of states, counties, cities and special use districts governed by our law. Government is too unwieldy already; there is no justification for adding this heavy layer of red tape. I respectfully dissent.

---

**2.** We can't always expect the government to act with unbounded compassion, patience and generosity. Indeed, when the government is acting as a commercial entity, taxpayers cajole it to act with all the ferociousness the marketplace demands. Certain limits must always apply: The government cannot, for example, use public works contracts to discriminate on the basis of race or sex. But when the government bargains over the commercial terms of the contract it should enjoy the same ability as private builders to draw up the deal as it likes and seek the best price and the best terms the marketplace allows.