204 F.3d 941 (9th Cir. 2000)
 G & G FIRE SPRINKLERS, INC., Plaintiff-Appellee,
v.
VICTORIA L. BRADSHAW, an individual, in her capacity as Labor Commissioner of the State of California; LLOYD W. AUBRY, JR., an individual in his official capacity as Director of the Department of Industrial Relations of the State of California; DANIEL DELLAROCCA, an individual, in his official capacity as Deputy Labor Commissioner of the State of California; ROGER MILLER, an individual in his official capacity as Deputy Labor Commissioner of the State of California; ROSA FRAZIER, an individual in her capacity as Deputy Labor Commissioner of the State of California, Defendants-Appellants.
G & G FIRE SPRINKLERS, INC., Plaintiff-Appellee,
v.
VICTORIA L. BRADSHAW, an individual in her official capacity as Labor Commissioner of the State of California; LLOYD W. AUBRY, JR., an individual in his official capacity as Director of the Department of Industrial Relations of the State of California; DANIEL DELLAROCCA, an individual in his official capacity as Deputy Labor Commissioner of the State of California; ROGER MILLER, an individual in his official capacity ORDER as Deputy Labor Commissioner of the State of California; ROSA FRAZIER, an individual in her official capacity as Deputy Labor Commissioner of the State of California; DIVISION OF LABOR STANDARDS ENFORCEMENT, an agency of the State of California; DEPARTMENT OF INDUSTRIAL RELATIONS, an agency of the State of California, Defendants-Appellants.
 No. 96-55194, No. 95-56639
 UNITED STATES COURT OF APPEALSFOR THE NINTH CIRCUIT
 Argued and Submitted September 14, 1999
On Remand from the United States Supreme Court April 19, 1999
Filed February 23, 2000
 
 Before: Stephen Reinhardt, Alex Kozinski and Michael Daly Hawkins, Circuit Judges.
 
 Order; Dissent by Judge Kozinski
 ORDER
 
 1
 In G&G Fire Sprinklers, Inc. v. Bradshaw, 156 F.3d 893 (9th Cir. 1998), we held that California Labor Code provisions authorizing the state to seize money and impose penalties for a subcontractor's failure to comply with prevailing wage requirements violated the Due Process Clause of the Fourteenth Amendment. See id. at 904. The Supreme Court granted certiorari, vacated our judgment, and remanded "for further consideration in light of American Manufacturers Mutual Insurance Company v. Sullivan, 119 S. Ct. 977 (1999)." Bradshaw v. G&G Fire Sprinklers, Inc., 119 S. Ct. 1450 (1999). Having determined that Sullivan is fully consistent with our analysis, we reinstate the judgment and opinion.
 
 DISCUSSION
 
 2
 Sullivan involved the Pennsylvania Workers' Compensation Act, under which an employer or its insurer must pay for all "reasonable" and "necessary" medical treatment for workrelated injuries. See 119 S. Ct. at 982. Under the Pennsylvania scheme, an insurance company could withhold payment for medical treatment if it disputed the reasonableness or necessity of that treatment. See Pa. Stat. Ann. S 531(5) ("All payments to providers for treatment . . . shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment."). The Sullivan plaintiffs claimed that the failure to pay their contested benefit claims within thirty days, before a process was provided to resolve the dispute about the "reasonableness" of their treatment, amounted to a deprivation of due process.
 
 
 3
 Sullivan dealt with two questions: (1) whether the insurance company's decision to withhold payment for disputed medical treatment was fairly attributable to the State so as to subject insurers to the constraints of the Fourteenth Amendment, 119 S. Ct. at 984; and (2) whether the Due Process Clause requires workers' compensation insurers to immediately pay disputed medical bills prior to a determination that the medical treatment was reasonable and necessary. Id. at 985.
 
 
 4
 The first question concerns whether there is state action, since the Fourteenth Amendment does not reach private acts or actors. Sullivan repeats a familiar calculus to determine the presence of state action: there must be some deprivation of a constitutional right and the party charged with the deprivation must be fairly said to be a state actor. Id. at 986. The second question turns on whether the claimant has a property interest in the matter complained of.
 
 
 5
 The Supreme Court found that the Sullivan plaintiffs did not possess a property interest in the immediate , unconditional payment for all medical treatment under the Pennsylvania statute. Nevertheless, the Court stated that the plaintiffs did have an interest in payment of "reasonable" medical costs, see Sullivan, 119 S. Ct. at 990, and went out of its way to make clear that its holding did not upset previous Supreme Court precedent supporting the conclusion that the plaintiffs had a property interest in their claims for payment. See id. at n.13 ("Respondents do not contend that they have a property interest in their claims for payment, as distinct from the payments themselves, such that the State, the arguments goes, could not finally reject their claims without affording them appropriate procedural protections.") (citing Logan v. Zimmerman Brush Co., 45 U.S. 422, 430-31 (1982)). Justice Ginsburg, who provided the fifth vote necessary to make the due process discussion in Sullivan an opinion of the Court, further clarified this distinction in her concurrence:
 
 
 6
 I join Part III of the Court's opinion on the under standing that the Court rejects specifically, and only, respondent's demands for constant payment of each medical bill, within 30 days of receipt, pending determination of the necessity or reasonableness of the medical treatment. I do not doubt, however, that due process requires fair procedures for the adjudica tion of respondents' claims for workers' compensa tion benefits, including medical care.
 
 
 7
 Sullivan, 119 S. Ct. at 991 (emphasis added) (citation omitted).
 
 
 8
 Our opinion adopts the approach explicitly preserved by the Sullivan majority and unequivocally adopted in Justice Ginsburg's concurrence. We specifically held that G&G did not have a right to payment of the disputed funds pending the outcome of whatever kind of hearing would be afforded to determine whether G&G complied with the California prevailing wage laws. See G&G Fire Sprinklers, 156 F.3d at 903-04. To the contrary, we explicitly authorized the withholding of payments pending the hearing. See id. G&G's due process rights were violated, we held, not because it was denied immediate payment, but because the California statutory scheme afforded no hearing at all when state officials directed that payments be withheld.[1] See id. at 904. Nor can there be any doubt whether the action at issue here was compelled by the State. The withholding in Sullivan was carried out by a private insurer exercising its discretion in a way permitted by State law. The withholding here was specifically directed by State officials in an environment where the withholding party has no discretion at all. Moreover, in their complaint the plaintiffs directly attack the notices of withholding issued by the state agency, alleging that they were issued "arbitrarily and unreasonably."
 
 
 9
 Because our holding is not contrary to the Court's ruling in Sullivan, and because our opinion's reasoning fits comfortably within the analytic framework set forth in Sullivan, we REINSTATE the judgment and the opinion reported at 156 F.3d 893 (9th Cir. 1998).
 
 
 
 Note:
 
 
 [1]
 It is true that our opinion addressed the withholding of payments pending the outcome of the hearing to determine contractor compliance in its discussion of the "process due" to a protected property interest, and not in its discussion of the nature of the property interest protected. In contrast, the above discussion in Sullivan is situated in the Supreme Court's discussion of the existence or nonexistence of a protected property interest. But this does not reduce the relevance of Sullivan's reasoning. As the Court recognized in the seminal due process case Matthews v. Eldridge, the definition of a protected property interest often includes a temporal component. See 424 U.S. 319 (1976) (identifying the property interest at stake as the beneficiary's interest in continuing to receive benefits for approximately one year). For this reason, issues of timing can arise at either the property-determination or the process-determination stage.
 
 
 KOZINSKI, Circuit Judge, dissenting:
 
 10
 I dissented from the original opinion in this case because I do not believe that relations among contracting parties are governed by the Due Process Clause merely because one of the parties happens to be a state. See G&G Fire Sprinklers, Inc. v. Bradshaw, 156 F.3d 893, 908 (1998) (Kozinski, J., dissenting). I continue to adhere to that view. But the Supreme Court has now directed us to reconsider our opinion in light of American Mfrs. Mut. Ins. Co. v. Sullivan, 119 S. Ct. 977 (1999). See Bradshaw v. G&G Fire Sprinklers, Inc., 119 S.Ct. 1450, (1999). In response, the majority reinstates its original opinion without amendment, claiming that its reasoning "fits comfortably within the analytic framework set forth in Sullivan." Reinstatement Order at 1970. I must dissent once again, because Sullivan fits the majority's rationale about as comfortably as Cinderella's slipper on the wicked step-sister's foot.
 
 
 11
 Sullivan teaches that, to state a claim for relief under section 1983, G&G must identify both an alleged constitutional deprivation and a state actor who is responsible for it. See Sullivan, 119 S. Ct. at 985 (rejecting the argument that "we need not concern ourselves with `the identity of the defendant' "). In deciding whether G&G has succeeded in this, Sullivan explains that we must begin "by identifying `the specific conduct of which the plaintiff complains.' " Id. at 985 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). Here the only deprivation alleged by G&G was effected by the prime contractor, who withheld funds which G&G claims under a contract.[1] There's no state action.
 
 
 12
 The majority waves a magic wand by asserting that"[t]he withholding here was specifically directed by state officials in an environment where the withholding party has no discretion at all." Reinstatement Order at 1970. This would be true had the prime contractor been ordered, under penalty of law, to withhold funds from G&G. It was not. The only entity "specifically directed" to withhold funds was the awarding body, which withheld funds only from the prime contractor, not from G&G. While the challenged provision authorized-even encouraged--the prime to withhold an equivalent amount from G&G, the prime was free to pay G&G the full amount specified by the contract. Sullivan clearly holds that mere authorization and encouragement do not render a private entity's decisions "fairly attributable" to the state. 119 S. Ct. at 986. Under Sullivan, then, the prime contractor who chose to deprive G&G of its alleged property was not a state actor.
 
 
 13
 This presents the same problem for G&G as it did for the plaintiffs in Sullivan. The Court's description of the Sullivan plaintiffs' attempt to get around this problem is equally apt here: "Perhaps hoping to avoid the traditional application of our state-action cases, respondents attempt to characterize their claim as a `facial' or `direct' challenge to the [provisions in question.]" Id. at 985. In like manner, G&G's claim comes to us in the garb of a "direct constitutional challenge to the state's regulatory power as embodied in these statutes . . . ." G&G, 156 F.3d at 902. The reinstated opinion assumes that, so long as standing requirements are satisfied, G&G may bring such a challenge. It then goes on to find a "causal link between G&G's injury and the state's action" sufficient to support standing. Id. at 900.
 
 
 14
 The problem is that standing deals only with whether the plaintiff "is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." Flast v. Cohen, 392 U.S. 83, 100 (1968). If the state's conduct does not violate the Constitution, there can be no question of standing--standing to challenge what? The violation alleged here is an unconstitutional deprivation of property. Sullivan tells us that the deprivation at issue cannot be attributed to the state. Therefore, the state cannot have violated G&G's right to due process. G&G is left with two alternatives: suing a depriver who is not a state actor, or suing a state actor who has committed no deprivation. The panel's opinion lets G&G get away with the latter, by substituting the normal causation prong of standing analysis for the more intimate causal relationship required by the state action doctrine.[2] Were it permissible to thus turn a pumpkin into a carriage, the Court should have allowed the Sullivan plaintiffs to bring their "facial challenge," on the theory that, while the private insurers in that case were not state actors, the state bureau's authorization of their withholding created a "causal link" sufficient to support standing.[3]
 
 
 15
 In addition to ignoring Sullivan's state action holding, the majority fails to apply the other teaching of the case--that before finding a deprivation, we must carefully identify the nature of the property interest at stake. See Sullivan, 119 S. Ct. at 989-90 (holding that a statutory entitlement to payment for "reasonable" and "necessary" medical treatment cannot give rise to a property interest until the payments in question have been proven to be reasonable and necessary). The opinion reinstated today asserts that G&G has a protectibleproperty interest "in being paid in full for the construction work it has completed." G&G, 156 F.3d at 901. This cannot be so, for just as the Sullivan plaintiffs had no property interest in receiving payment for medical treatments that had not been shown to be "reasonable" and "necessary," G&G can have no property interest in being paid for work that has not been shown to satisfy the contractual condition that it be completed in accordance with prevailing wage requirements. Nevertheless, though the majority now attempts to recharacterize its position, see Reinstatement Order at 1969, its opinion remains unambiguous in holding that G&G has already suffered a deprivation for which the state is required to provide a post-deprivation hearing. See G&G, 156 F.3d at 90304.
 
 
 16
 Even if the reinstated opinion actually rested on the rationale now attributed to it, we would still have a case of premature remediation. The majority's current position is that its holding is in line with previous Supreme Court precedent protecting plaintiffs' "property interest in their claims for payment." Reinstatement Order at 1968. If the property interest at stake here is G&G's claim for payment, however, when and how G&G was deprived of it? This is not a case like Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), where the plaintiff had filed a timely claim that was dismissed because of a procedural default committed by the state. See id. at 426-27. G&G has yet to attempt to file a claim in state court. How can the state have deprived G&G of a legal claim it has never asked the state to enforce?[4]
 
 
 17
 The reinstated opinion forces the state to create an entirely new administrative machinery if it wishes to withhold funds in accordance with the terms of its contract. See G&G, 156 F.3d at 905-06. The majority appears to believe this is justified by Justice Ginsburg's concurring statement in Sullivan that " `due process requires fair procedures for the adjudication [of claims.]' " Reinstatement Order at 1969 (quoting Sullivan, 119 S. Ct. at 991 (Ginsburg, J., concurring)). No doubt it does. But this is not a case like Goldberg v. Kelly, 397 U.S. 254 (1970), where the Court, having identified a previously unrecognized property interest in welfare benefits, was obliged to create a new procedural regime to protect it. This is a claim for payment on a contract. There is a wellestablished "fair procedure" for dealing with such claims: an action for breach of contract in state court. It seems unlikely that Justice Ginsburg would regard such a time-honored procedure as inadequate to satisfy the demands of due process. The majority has not explained why working on a government contract heightens one's interest in receiving prompt payment so as to require procedural safeguards not available to other parties that have a disputed claim under a contract.
 
 
 18
 It is true that the law does not on its face guarantee that a subcontractor will attain an assignment enabling it to sue the awarding body. But G&G has not tried to obtain such an assignment from the prime contractor, nor has it given the state courts a chance to decide whether a subcontractor who has been denied such assignment nevertheless has an equitable right to sue under state law. Until these questions have been resolved against G&G, it simply cannot be said that the state has " `finally reject[ed] their claims without affording them appropriate procedural protections.' " Reinstatement Order at 1968 (quoting Sullivan, 119 S. Ct. at 990 n.13).
 
 
 19
 To sum up, the reinstated opinion papers over a state action deficiency with standing analysis, identifies a property interest the Court has told us can't yet exist, and holds that due process entitles G&G to the creation of a new procedure bypassing the one all other unpaid contractors are required to use. A fairy godmother could do no more. Once again, I must respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 See G&G, 156 F.3d at 901 n.4 ("Here, G&G was not paid by its respective principal obligor, the prime contractor, and it is asking for an opportunity to contest that deprivation.")
 
 
 [2]
 Compare G&G, 156 F.3d at 899-900 (causation requirement for standing satisfied where choices of third party have been made " `in such a manner as to produce causation and permit redressability' ") (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992)), with Sullivan, 119 S. Ct. at 986 (no state action unless the state has " `exercised coercive power' " or provided such significant encouragement that " `the choice must in law be deemed to be that of the State' ") (quoting Blum, 457 U.S. at 1004).
 
 
 [3]
 Like G&G, the Sullivan plaintiffs had also named as defendants the state officials who administered the challenged act. See Sullivan, 119 S. Ct. at 984. Yet after holding that the private insurers regulated by the act were not state actors, the Court held that this alone would be sufficient to reverse the Third Circuit's holding that the act violated due process. See id. at 989. The Court nevertheless went on to address the merits of the claim, because it thought the question an important one. See id.
 
 
 [4]
 Cf. Sullivan, 119 S. Ct. at 988 (noting that the legal obligation to pay on a contract arises only after one has "initiated a claim and reduced it to a judgment").